JOELL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96535.  Promulgated April 12, 1940.

*Morris H. Goldman, Esq.*, for the petitioner.
*Bernard D. Daniels, Esq.*, for the respondent.

OPINION.

DISNEY: In this proceeding income and excess profits taxes are involved, deficiencies having been determined as follows:

| Year | Income tax | Excess profits tax |
| --- | --- | --- |
| 1935 | $121.17 | $33.27 |
| 1936 | 657.75 | 130.95 |

The questions presented are as to propriety of certain deductions under section 23 (b) and (c), Revenue Act of 1934, and a credit for dividend payments within the meaning of section 26 (c) (2) of the Revenue Act of 1936.

All facts were stipulated, are found as stipulated, and may be summarized as follows:

Petitioner, a Pennsylvania corporation engaged in the business of owning and operating real estate, was organized in 1926. It filed its income tax returns for the years here involved with the collector for the first district of Pennsylvania. It reported income in the taxable years on an accrual basis. In 1926 the total outstanding common stock of the petitioner was held as follows: Joseph E.

Cohen held two shares, and his daughters, Sarah Cohen, Reba Cohen, and Yetta Schweriner each held 66 shares.

On or about September 15, 1926, Joseph E. Cohen conveyed to the petitioner his residence in Philadelphia, subject to a mortgage of $4,000 bearing interest at 6 percent, on condition that the petitioner lease same to Joseph E. Cohen and/or Sarah Cohen, his daughter, at a yearly rental of $1 and assume payment of the mortgage and of all taxes, water rents, interest payments, repairs, etc. The lease was to continue during the life and until six months after the death of the survivor of the two lessees. At the date of conveyance Joseph E. Cohen was 47 years of age and Sarah Cohen was 21 years of age. During 1935 and 1936 the petitioner owned the property, and, interest having accrued at the rate of $240 per year, it claimed deduction thereof and depreciation of $140 per year. That amount is agreed to be the proper amount, if petitioner is entitled to any depreciation. The property was set up at the date of acquisition at $7,000 on petitioner's books, and in 1931 improvements in the amount of $2,000 were made on the property. City and school taxes accrued against the property on January 1, 1935, in the amount of $195.22, and on January 1, 1936, in the amount of $186.03, and were claimed as deductions.

In 1926 petitioner acquired certain other real estate in Philadelphia, subject to first and second mortgages of $200,000 and $100,000, respectively. The deed, *inter alia*, recited:

Under and subject, nevertheless, to the aforesaid restrictions against offensive occupation and to payment of the aforesaid mortgage debt or principal sum of Two Hundred Thousand Dollars, and also the payment of certain mortgage debt or principal sum of One Hundred Thousand Dollars with interest.

On November 7, 1931, the petitioner entered into a written agreement with the second mortgagee and Joseph Cohen, the mortgagor. The agreement was amended in writing on December 24, 1931, and again on September 8, 1936. In effect, the agreement as amended provided for the assignment to the second mortgagee of leases upon the premises, the collection by the mortgagee of the rents and their application to payment of taxes, water rents, interest, fire insurance premiums, and payments upon the first and second mortgages. In accordance with the agreement the second mortgagee during the taxable years collected the rents, paid $2,700 principal on the first mortgage, and retained $6,448.58 in reduction of the second mortgage. No credit was allowed the petitioner for said sums in computing undistributed net income.

The respondent determined that the interest and taxes paid upon the residence acquired from Cohen, and pursuant to the agreement

of conveyance, are capital expenditures and not ordinary deductions, as contended by petitioner, who relies upon the text of section 23 (b) and (c), respectively, of the Revenue Act of 1934. The agreement of purchase expressly provides for assumption of taxes and interest, and so far as taxes and interest had accrued at the date of acquisition and formed a part of the original consideration, it is clear that they constituted capital expenditures. *John Hancock Mutual Life Insurance Co.*, 10 B. T. A. 736; *Lifson* v. *Commissioner*, 98 Fed. (2d) 508; *Norman Cooledge*, 40 B. T. A. 1325 (1328). But the interest and taxes here involved were accrued for the years 1935 and 1936, whereas the property was acquired in 1926, so that the interest and taxes for the taxable years were not accrued at the date of acquisition of the property, and a different question must be answered. The cases cited by the respondent do not answer it. In *MacDonald* v. *Commissioner*, 76 Fed. (2d) 513 (C. C. A., 2d Cir.), affirming 30 B. T. A. 884, it was held that deferred payments were capital expenditures where interest was not provided for. Here provision was made in the mortgage for interest. In *Commissioner* v. *John C. Moore Corporation*, 42 Fed. (2d) 186, the court affirmed the Board in apportioning yearly payments between capital and interest, and allowing deduction of the latter. In *Hudson-Duncan & Co.*, 36 B. T. A. 554, we held that a portion of monthly payments upon sale of realty represented interest and was therefore deductible as such. The same logic applies to taxes. Only so far as accrued at the date of acquisition do they form part of the purchase price and constitute capital expenditures. In taxes thereafter arising the vendor is not interested, and can not reasonably be considered as including them in the sale price. The cases confine the capital expenditure to interest and taxes which have accrued. We, therefore, conclude and hold that the taxes and interest for 1935 and 1936 are properly to be allowed as deductions in the amounts set forth above.

Petitioner claimed depreciation of $140 per year. Respondent contends that it is not deductible for the reason that the property, being leased to the president of the corporation and the secretary, his daughter, for their lives, for $1 per year, was not "used in the trade or business" within the language of section 23 (c) (1) of the Revenue Act of 1934. In our opinion, under the circumstances here involved the respondent's position should be sustained. The property was the residence of the grantor. By the terms of acquisition of the property it was retained, at a nominal rental, by the grantor for his life and/or that of his daughter, and six months thereafter. We think it was not during such period property used in trade or business, but was, in effect, retained for the life of grantor and

**828**

daughter. In *Gertrude D. Walker*, 20 B. T. A. 937, 942; affd., 63 Fed. (2d) 351; certiorari denied, 289 U. S. 746, we denied deduction for depreciation upon the residence of petitioner's father, which had been purchased by her with hopes of sale and after seven years was sold, but during the interim was used for no purpose except as residence by the petitioner for three months and by her stepmother for a short time without payment of rent. In *Elsie A. Drexler*, 25 B. T. A. 79, petitioner's property was used during the taxable years by relatives without payment of rent. Depreciation was disallowed. See also *Des Moines Title Co.*, 39 B. T. A. 729, 733. The respondent's action in denying deduction of the depreciation is approved.

The remaining question is whether, under section 26 (c) (2) of the Revenue Act of 1936,[1] the petitioner is entitled to a credit, in computing undistributed net income, of the amounts paid in 1936 on the first and second mortgages on certain other property owned and acquired by it subject to the mortgages. This depends upon whether the amounts were paid upon a debt within the meaning of the statute. They were required to be paid by a written contract executed prior to May 1, 1936, providing for application of the income from the property upon the mortgages. The respondent argues (a) that the agreements do not restrict payments of dividends, (b) that the mortgages being neither made by nor assumed by the petitioner, the contracts do not provide for payment of a debt due by petitioner, and (c) that they do not expressly deal with the disposition of earnings or profits of the taxable year. Petitioner agrees that the agreements do not restrict payments of dividends, but says that is immaterial under section 26 (c) (2), argues that the debt need not be owing from petitioner and need be only a "debt" under the expression of the statute, but that even though, as petitioner admits, the mortgages were not its debts or direct obligations of the corporation, they were charges upon its property, and

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

\* \* \* \* \* \* \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

that the contract that the rents be applied to payment thereof created a debt within the meaning of the statute. As to respondent's point (c) petitioner urges that rents must be considered as earnings and profits. On this last point we agree with the petitioner. Rents can not in logic be eliminated from earnings or profits, and come within the statutory expression. In *G. B. R. Oil Corporation*, 40 B. T. A. 738, we applied the statute to income from oil leases. Here income from real estate is involved. Certainly there can be no distinction. We hold that the income from the real estate herein was "earnings and profits" under section 26 (c) (2). We also hold that the contract "expressly deals with the disposition" of such "earnings and profits of the taxable year." In *G. B. R. Oil Corporation*, *supra*, we said that the contract there, made in 1931, "did not refer specifically to the taxable year 1936, but the language of the assignments was certainly broad enough to include the taxable year 1936." The same is true herein.

This leaves for consideration only the question as to whether the contract provided for "discharge of a debt" within the intendment of section 26 (c) (2) of the Revenue Act of 1932. The statute uses the word "debt" without modification or explanation. Shall the statute be applied where the debt, though not a primary or personal liability of the corporation, is a charge against its property? We are unable to see any reason to distinguish between a corporation discharging, through a contract applying rents, a mortgage signed or assumed by it, and one which in the same manner discharges an encumbrance upon property at date of its acquisition. In *G. B. R. Oil Corporation*, *supra*, we said:

> The general purpose of section 26 (c) (2), it seems to us, is to give a credit where a dividend paid credit can not be secured. In other words, the basic intent of Congress seems to have been to include in the provision only contracts which inevitably require in their performance a drawing on current earnings, thus removing current earnings as a source of dividend payments. * * *

In the light of this language, it is immaterial whether the corporation, in drawing on its current earnings to discharge an indebtedness on its property, is paying a debt of its own creation. It is interested in the payment because of the burden on its property, and is "removing current earnings as a source of dividend payments" to the same extent as if the debt were of its own creation or had specifically been assumed. We hold that the contract here dealt with the discharge of a debt within the purview of the statute; and that petitioner is therefore entitled to credit of $9,148.59. It is therefore unnecessary to pass upon petitioner's further contention that the contract itself created a debt within the meaning of the statute.

*Decision will be entered under Rule 50.*