BALTIMORE STEAM PACKET COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102559.    Promulgated June 5, 1941.

*Robert C. Vincent, Esq.,* for the petitioner.
*B. M. Brodsky, Esq.,* for the respondent.

---

[1] Dissent. See p. 1318.

OPINION.

HARRON: In the computation of the surtax imposed by section 14 of the 1936 Act on its income tax return for the taxable year petitioner

took a credit "for contracts restricting dividend payments" in the amount of $25,490.23. In the statement attached to the deficiency notice respondent disallowed the credit in full.

The sole question before the Board for determination is whether in the computation of the surtax imposed by section 14 petitioner is entitled to a credit of $25,490.23 under section 26 (c) (2), the provisions of which are as follows:

SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*  \*  \*  \*  \*  \*  \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

\*  \*  \*  \*  \*  \*  \*

(2)· DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt; or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

Petitioner bases its claim to a credit under section 26 (c) (2) on the provision contained in each of the three contracts entered into by it with the three banks on July 31, 1935, requiring that beginning with January 1, 1936, "any net income after deductions for depreciation (as the term net income is now defined in the accounting regulations and reports of the Interstate Commerce Commission) of [petitioner] \* \* \* from its operations, as reported in its annual reports to the Interstate Commerce Commission" be applied to the reduction of the loans from the three banks. The parties apparently agree that the provision in question was contained in written contracts executed by petitioner prior to May 1, 1936, (see *Sutcliffe Co.*, 41 B. T. A. 1009) and that the debts referred to in the provision in question were incurred before April 30, 1936.

Respondent contends, first, that the provision in question did not deal expressly with the disposition of earnings and profits of the taxable year, as required by section 26 (c) (2). He seeks to support this contention by reliance on excerpts from the opinion of the Supreme Court in *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46.

This contention, in our opinion, is without merit. Article 26–2 (c) of Regulations 94 itself provides in part as follows: "A contractual provision, however, shall not be considered as not expressly dealing with the disposition of earnings and profits of the taxable year merely

because it deals with such earnings and profits in terms of 'net income', 'net earnings', or 'net profits.'" The Board has held that section 26 (c) (2) does not require that the contractual provision specifically refer in so many words to "earnings and profits of the taxable year." *G. B. R. Oil Corporation*, 40 B. T. A. 738; *Michigan Silica Co.*, 41 B. T. A. 511; *Joell Co.*, 41 B. T. A. 825. In the *G. B. R. Oil Corporation* case the contractual provision required that "all sums of money of every character whatsoever" from certain oil leases owned by the taxpayer be paid in discharge of a debt. In the *Michigan Silica Co.* case the contractual provision required that "on or before the 10th of each month * * * twenty-five cents (25¢) for each ton of sand produced and sold by" the taxpayer during the previous month be irrevocably set aside for the discharge of a debt. In the *Joell Co.* case the contractual provision required that rents from certain leases owned by the taxpayer be paid in discharge of a debt. The Board held in each of the above cases that the contractual provision expressly dealt with the disposition of earnings and profits of the taxable year.

In the present case the provision in question did not refer specifically in so many words to "earnings and profits of the taxable year." However, it did deal expressly with the disposition of "net income after deductions for depreciation (as the term net income is now defined in the accounting regulations and reports of the Interstate Commerce Commission)." The record shows that such net income after deductions for depreciation was equivalent to earnings and profits. Moreover, the provision in question dealt expressly with such net income after deductions for depreciation "as reported in its annual reports to the Interstate Commerce Commission." And by its very terms the provision was to become effective January 1, 1936, the beginning of the taxable year. The conclusion is inescapable that the provision in question dealt expressly with the disposition of earnings and profits of the taxable year within the meaning of section 26 (c) (2). *G. B. R. Oil Corporation, supra; Michigan Silica Co., supra; Joell Co., supra.*

There is nothing in the opinion of the Supreme Court in *Helvering v. Northwest Steel Rolling Mills, Inc., supra*, which supports respondent's contention. In that case the Supreme Court held that a corporation which was prohibited by state law from distributing as dividends its profits of the taxable year because of a previously existing deficit was not entitled to a credit under section 26 (c) (1). The Court stated that a provision of the corporation's charter that it should obey state law, including the statutory prohibition against distributing dividends, was not a provision of a written contract executed by the corporation and thus did not meet the requirements of section 26 (c) (1). The Court's general statement, "that pro-

visions granting special tax exemptions are to be strictly construed," does not compel the conclusion in the present case that the provision in question did not deal expressly with the earnings and profits of the taxable year.

Respondent contends, next, that the provision in question did not require petitioner's earnings and profits of the taxable year "to be paid within the taxable year" or "to be irrevocably set aside within the taxable year," as required by section 26 (c) (2). In support of this contention he cites *Moloney Electric Co.*, 42 B. T. A. 78, and relies on excerpts from the opinion of the Supreme Court in *Helvering* v. *Northwest Steel Rolling Mills, Inc., supra.*

In our opinion, there is no merit in this contention. The basic situation in the present case is not unlike that in *Strong Manufacturing Co.*, 41 B. T. A. 1273. In that case on January 1, 1936, the taxpayer was indebted to a bank in the amount of $47,000. The debt was evidenced by a note and secured by a mortgage. Under a provision of the mortgage the taxpayer was required to pay to the bank "forty percentum (40%) per annum of its net earnings for any calendar year" to be applied on the debt. Such payment was to be made to the bank "not later than April 15th of the succeeding year." At the end of September 1936 it appeared that the taxpayer's net earnings for 1936 would be such that 40 percent thereof would be in excess of the amount required to discharge the debt in full. Therefore, on October 15, 1936, the taxpayer made a payment to the bank which discharged the debt in full. It would not have been possible on January 1, 1937, to determine the net earnings of the taxpayer for 1936 with complete accuracy. The Board held that the taxpayer was entitled to a credit under section 26 (c) (2) in the amount of the payment made by it to the bank on October 15, 1936, in full discharge of the debt. With respect to the question as to whether or not the contractual provision required that 40 percent of the taxpayer's earnings and profits of the taxable year "be paid or irrevocably set- aside within the taxable year," the Board stated in part as follows:

* * * We are of the opinion that the "application" to the indebtedness of the designated portion of the earnings may, for present purposes, be considered to be called for by the contract "as of" the taxable year, *Michigan Silica Co.*, 41 B. T. A. 511, 515, and therefore to constitute the irrevocable setting aside contemplated by the statute.

The basic situation in the present case also resembles that in *Michigan Silica Co., supra.* In that case the taxpayer on January 1, 1936, had bonds outstanding which were secured by a trust indenture. Under a provision of the trust indenture the taxpayer was required to pay to the trustee on or before the tenth of each month 25 cents for each ton of sand produced and sold by it during the pre-

vious month. In case the taxpayer had not received payment for sand so sold, it might defer payment to the trustee of the sum of 25 cents per ton until it had received payment, but not for more than 60 days after such sale. The sums so paid were to be placed by the trustee in a sinking fund for the purchase or retirement of the bonds. The amounts which the taxpayer was obligated to pay into the sinking fund for sand produced and sold during the 12 months of 1936, and which were paid in the months from February 1936 to January 1937, inclusive, totaled $26,828.88. The Board held that the taxpayer was entitled to a credit in the amount of $26,828.88 under section 26 (c) (2). The Board stated in part as follows:

Since it would be impossible to compute any monthly payment due the sinking fund here until after the close of the month, the contested credit shall include the payment for sand sold during December of the taxable year, 1936, even though that payment was not physically made until January 1937. This seems proper on the theory that such payment was made as of December 1936. Cf. *Mason Machine Works Co.*, 3 B. T. A. 745. Moreover, respondent makes no issue as to the amount of the credit.

The application of the principles set forth in the *Strong Manufacturing Co.* case and the *Michigan Silica Co.* case to the facts present here compels the conclusion that the provision in question required petitioner's net income (after deductions for depreciation) of the taxable year to be paid or irrevocably set aside "as of the taxable year", and thus "within the taxable year" within the meaning of section 26 (c) (2).

*Moloney Electric Co.*, *supra*, which is cited by respondent in his brief, is distinguishable. In that case, under a provision of a trust agreement securing its bonds, the taxpayer was required to pay to the trustee as a sinking fund on the first day of June of every year, so long as the bonds were outstanding, 20 percent of its net earnings for the next preceding year in excess of $320,000. The Board held that this provision of the trust agreement did not require a portion of the taxpayer's earnings and profits of the taxable year to be paid or irrevocably set aside within the taxable year and that the taxpayer was not entitled to a credit under section 26 (c) (2) with respect to this provision of the trust agreement. The Board distinguished the *Strong Manufacturing Co.* case on the ground that in the *Strong* case "the taxpayer recognized that under its contract its creditor had an equitable lien, during the taxable year, upon 40 percent of its net earnings" while in the *Moloney* case "the creditor had no equitable lien upon [taxpayer's] earnings until and unless they should be in excess of $320,000."

It should be pointed out that the record in the present case clearly indicates that petitioner recognized that under the provision in question the three banks had an equitable lien during the taxable year

upon its net income (after deduction for depreciation) of that year. The testimony of petitioner's general auditor indicates that petitioner understood that its net income of the taxable year "belonged to" the three banks; that the three banks had "an equitable lien" on its net income of the taxable year; and that it was obligated to pay its net income of the taxable year to the three banks at the end of that year. In accordance with this understanding petitioner, about the middle of December of the taxable year, estimated that its net income of the taxable year would be approximately $25,000 and on December 23 of the taxable year paid a total of $25,000 to the three banks. Its net income of the taxable year, as finally determined after the close of that year, amounted to $25,490.23; and on March 13, 1937, it paid the balance of $490.23 to the three banks.

*Lafayette Hotel Co.*, 43 B. T. A. 426, and *Belle-Vue Manufacturing Co.*, 43 B. T. A. 12, which are cited by respondent in his brief, are not in point. For reasons already set forth above, the opinion of the Supreme Court in *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, *supra*, does not support respondent's contention.

Under section 26 (c) (2) the credit allowable is limited to the amount which was actually paid or irrevocably set aside within the taxable year under the provision in question. Petitioner paid to the three banks a total of $25,000 on December 23, 1936, and a total of $490.23 on March 13, 1937, under the provision in question. The payment of $490.23 may be considered as made "as of" the taxable year. *Michigan Silica Co.*, *supra*. Respondent makes no issue as to the amount of the credit allowable.

Accordingly, it is held that, in the computation of the surtax imposed by section 14 of the Revenue Act of 1936, petitioner is entitled to a credit in the amount of $25,490.23 under section 26 (c) (2). Respondent is reversed.

*Decision will be entered under Rule 50.*