CAROLINA-FLORIDA REALTY COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104800. Promulgated March 27, 1942.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Charles Oliphant, Esq.*, for the respondent.

778

OPINION.

HARRON: The question and the discussion relates to $7,500 in each taxable year, which was paid by petitioner's lessee to the trustee under the trust indenture and was used by the trustee each year to

redeem and retire bonds having the equivalent face value. The factors to be considered are as follows: (a) Petitioner had a debt in the amount of outstanding bonds. *LeTulle* v. *Scofield*, 308 U. S. 415. (b) Petitioner was entitled to receive rent for the leased property (which was mortgaged to secure the bonds). (c) Petitioner, in effect, assigned part of the rents to the trustee, by directing its lessee to pay a portion of the rents each month to the trustee. (d) The lessee paid $7,500 a year to the trustee. (e) The trustee used the $7,500 paid to it in each year to purchase bonds which were canceled and petitioner's debt evidenced thereby was thus, and to such extent, paid in each year.

The net result of this arrangement was that a portion of petitioner's *earnings* of the year was set aside within the year for the discharge of its debt; and, also, a portion of petitioner's earnings of the year was *applied in discharge* of a debt within the taxable year. This conclusion necessarily follows from the facts and from the law of constructive receipt of income. When B pays money to C to discharge an indebtedness running from A to C, A receives income, constructively, and is taxable upon it. *United States* v. *Boston & Maine Railroad*, 279 U. S. 732.

Since part of petitioner's earnings in each taxable year was used within the year to discharge part of petitioner's debt, it would be equitable, at least, to hold that petitioner is entitled to the credit claimed in each year under the terms of section 26 (c) (2),[1] because so much of petitioner's earnings were withdrawn, thereby, from distribution to its stockholders in dividends. The question to be determined is whether the prerequisites for the credit as set forth in the statute are met, and the material part of the statute is found in the parenthetical clause of section 26 (c) (2). The question, then, is as follows: Was that portion of petitioner's earnings of the taxable year which was irrevocably set aside and applied in discharge of petitioner's debt, which was incurred prior to May 1, 1936, so dealt with by "a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earn-

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

ings and profits of the taxable year"? The answer to this question requires our construction of section 2 of article III of the trust indenture, which has been set forth in the findings of fact.

In our opinion that section of the trust agreement meets the statutory requirements. The words "earnings and profits of the taxable year" do not appear in the written contract but that is not always necessary in order to apply section 26 (c) (2). See *G. B. R. Oil Corporation*, 40 B. T. A. 738; *Michigan Silica Co.*, 41 B. T. A. 511; affd., 124 Fed. (2d) 397; *N. O. Nelson Co.*, 45 B. T. A. 899; *Baltimore Steam Packet Co.*, 44 B. T. A. 629; *Saginaw & Manistee Lumber Co.*, 45 B. T. A. 780; *Joell Co.*, 41 B. T. A. 825. The meaning of section 2 of article III of the trust indenture is clear. It is that the petitioner, a party to the trust agreement, having a right to receive rents under a lease, has directed the lessee to pay a definite amount out of such rents to the trustee, monthly, to be deposited in the sinking fund. Monthly rental, being earnings of each taxable year, had to be set aside and paid to trustee. Under these restrictions upon the use of receipts from the property covered by both the trust agreement and the lease, petitioner could not use such income derived from the lease to pay dividends to its stockholders until the bonds had been paid in full.

In *G. B. R. Oil Corporation, supra,* we held that income from oil leases was "earnings and profits" under section 26 (c) (2). In *Joell Co., supra,* we held that income from real estate was "earnings and profits." In *Michigan Silica Co., supra,* we held that proceeds from the sales of land were "earnings and profits." In each case we held that a provision which "required" the payment of ascertainable amounts into a sinking fund or to discharge a debt was a "provision [which] expressly deals with the disposition of earnings and profits of the taxable year." In none of these cases, in the written agreements involved, was there an express mention of "earnings and profits", and respondent placed reliance on that fact, as he does here, in support of his contention that the contracts did not contain any provision expressly dealing with the disposition of the taxpayer's earnings and profits. In the *Michigan Silica* case it was pointed out that the statute does not require that such terms be used in the written contract, but only that the written contract contain a provision which expressly *deals* with the *disposition* of earnings and profits of the taxable year. As has been pointed out above, the *disposition* of a part of petitioner's earnings in each year was dealt with in the trust indenture.

The property which was leased by petitioner to the Cameron & Barkley Co. was the property mortgaged to secure the bonds. Petitioner, as owner of the equity in the property and as lessor, was entitled to rents from the property. The effect of the lease provision requiring the lessee to make fixed monthly payments to the trustee for

payment into the sinking fund was that petitioner made an assignment of a portion of the rents to the trustee. It is stated to be a general rule that no particular form of assignment is necessary, in the absence of restrictions imposed by statute, and any acts or words are sufficient which show an intention of transferring the owner's interest. 6 Corpus Juris Secundum, 1090, par. 41. We find no statutory requirements in South Carolina on the mode or form of an assignment. Under the lease it was clear that petitioner gave up its right, in favor of the trustee, to a portion of rents, and under section 2 of article III of the trust it is clear that the trustee could look to the lessee for receipt of ascertainable amounts each month. Failure of the lessee to make the payments to the trustee constituted default under the lease. The situation is similar to that in the *G. B. R. Oil Corporation* case.

It is held that petitioner is entitled to the claimed credit in each year under section 26 (c) (2).

Reviewed by the Board.

*Decision will be entered under Rule 50.*

DISNEY concurs only in the result.

VAN FOSSAN and MELLOTT dissent.