## SCOFIELD, Collector of Internal Revenue, v. VALLEY PIPE LINE CO.

### No. 10543.

Circuit Court of Appeals, Fifth Circuit.

Nov. 16, 1943.

Louise Foster and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr. Asst. Atty. Gen., and Ben F. Foster, U. S. Atty., and J. M. Burnett, Asst. U. S. Atty., both of San Antonio, Tex., for appellant.

R. N. Gresham, of San Antonio, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee, in its income tax return for 1936, claimed an undistributed profits

surtax credit[1] of $77,228.55 paid in that year under a contract restricting payment of dividends.[2] The claim disallowed, appellee sued, and obtained judgment against, the collector for $11,642.69, the overpayment resulting from the disallowance. The collector is here insisting that the facts stipulated and found[3] do not support the conclusion and judgment that payments on which the claim was based "had been made within the taxable year from the earnings and profits of that year under the provisions of a written contract * * * expressly dealing with the disposition of earnings and profits of the taxable year and requiring that amount to be paid within the taxable year in discharge of a debt". The collector does not contest the fact that there was a written contract for payments during the year out of receipts in that year, nor, though he points to the fact that the monthly payments were less than those stipulated for, does he seriously contend that the payments were not under the written contract. He relies on the settled law that Sec. 26(c) (2) grants a credit in the nature of a deduction and the burden is on the taxpayer to show not substantial but exact compliance with its terms, Helvering v. Ohio Leather Co., 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. ——. So relying, he insists that taxpayer has failed here because (1) the contract instead of providing as to the required payments, in the words of the statute, that these are to be made out of "the earnings and profits" of the taxable year, provides for payment out of the "gross income" and (2) instead of limiting the payments so required to be made to indebtedness incurred prior to May 1, 1936, it includes indebtedness incurred after that date.

---

[1] 26 U.S.C.A. Int.Rev.Acts page 823: "The term 'undistributed net income' means the adjusted net income minus the sum of the dividends paid credit provided in section 27 *and the credit provided in section 26(c), relating to contracts restricting dividends*". Revenue Act of 1936, § 14(a) (2), 26 U.S.C.A. Int.Rev. Acts, page 823. (Emphasis supplied.)

[2] Revenue Act of 1936, § 26(c) (2), 26 U.S.C.A. Int.Rev.Acts, page 836: "Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936."

[3] These are that the taxpayer succeeded to and became bound by a contract, between Republic Supply Co. and Texas State Oil Co., which secured certain indebtedness by a mortgage on the entire pipe line project and a pledge of all contracts for the purchase, transportation and sale of oil, which contract, mortgage and pledge required that the indebtedness should be paid by paying on it each month 75 per cent of the gross income of the project. Appellee's obligation to pay by the 20th of each month 75 percent of the gross income from the project during the preceding month was the only provision as to maturity of the indebtedness and the only requirement for its payment. Its only source of income was from the pipe line project. During the time here involved appellee was able to pay only $15,000 of each month's income on the debt. While these monthly payments did not always meet the full amount of monthly maturities of 75 per cent of gross income from the pipe line project for the preceding month, they were in substantial compliance therewith. This failure to pay the full amount agreed did not cause any change in the written agreement as to the method of payment of the indebtedness. On the contrary, it was expressly agreed that while the creditor would and did accept less than the amount agreed to be paid, it would not and did not change the requirements of the written agreement. Of the indebtedness covered by the contract, $156,697.33 was incurred prior, and $5,760.02 subsequent, to May 1, 1936. During the tax year in question appellee, pursuant to the contract, paid on the indebtedness accrued prior to May 1, 1936, a total of $95,007.93, but since appellee's undistributed net income for the year was only $77,228.55, the trial court allowed the payments as a credit only to the extent of that sum. During the same period payments were made on the indebtedness incurred subsequent to May 1, 1936, but no credit was allowed for these.

On his first point, the collector cites those cases which hold that a provision that payments are to be made within the taxable year, without more, is not sufficient to entitle taxpayer to the credit,— the provision must require payment out of earnings and profits of that taxable year.[4] He urges upon us that a provision for payment out of "gross income" is not the equivalent of a provision for payment out of "earnings and profits", the statutory words used, because payment out of "gross income" could be made even if there were no earnings and profits, and a requirement which can be satisfied if no earnings and profits in fact exist cannot be said to be the same as one which can be satisfied only if they do. As applied to this case, the argument is pure hypothesis. The facts undisputed and found here are that included in gross income for the year in question were earnings and profits considerably in excess of the credit allowed, and that the parties in contracting understood that there would be. Realizing that this is so, the collector, citing in support Treasury Regulations 94, Art. 26-2(c),[5] takes the flat position that unless the provision for payment is such that it cannot be satisfied except out of net income, it is insufficient and, though it was intended that they should be, and the payments were in fact, made out of net income, since the provision did not designate this as the sole source, it is not effective as a basis for credit.

We do not at all agree either that the regulation means what the collector claims that it does or that it would be valid if it did have that meaning. While it is true that it draws a distinction between "net" and "gross" income, the regulation deals not with a provision, as here, for payment of a certain *percentage of the gross income* but of an amount "equal to" that percentage, and thus accords with the uniform current of authority. If it should be construed as having the effect of writing the word "net" into the statute before the words "earnings" and "profits" it would amount not to a construction but to a rewriting of the statute, and this the commissioner may not by regulation do. Gross income of necessity includes whatever earnings and profits there are, and the facts of this case showing that the taxpayer did not pay the full 75 percent of gross income it had agreed to pay because it did not have that much earnings and profits available, leaves in no doubt that the contract as drawn, as intended, and as executed, was a provision for the payment of earnings and profits within the statute. This view has been uniformly taken by the Board in cases cited below,[6] and all of these decisions have been acquiesced in by the commissioner. In G. B. R. Oil Corp., supra, it is said: "It is true * * * that the assignments in question do not expressly refer to 'earnings and profits' as such, but they certainly do require that all of petitioner's gross receipts from these properties be paid to the bank and that would certainly include all 'earnings and profits' from them."

The collector concedes arguendo that as to a provision for the payment of *all* of the gross receipts it might be properly concluded that the contract deals with the disposition of whatever earnings and profits there are for the year. He insists, however, that where the contract, as here, provides for less than *all* of the gross receipts, it may not be, for the payments on the debt might be made out of the expenses and the expenses might be paid out of

---

4 C. C. Clark, Inc., v. United States, 5 Cir., 126 F.2d 292; Helvering v. Moloney Electric Co., 8 Cir., 120 F.2d 617; Clover Splint Coal Co. v. Commissioner, 3 Cir., 130 F.2d 52; Helvering, Commissioner, v. Magnus Beck Brewing Co., 2 Cir., 132 F.2d 379; Commissioner v. Saginaw & Manistee Lbr. Co., 7 Cir., 133 F.2d 755.

5 "A corporation * * * is not entitled to a credit under a provision merely requiring it, for example * * * to pay into a sinking fund for the retirement of * * * bonds an amount equal to a certain percentage of gross sales or gross income. Such provisions do not expressly deal with the disposition of earnings and profits of the taxable year. A contractual provision, however, shall not be considered as not dealing with the disposition of earnings and profits * * * because it deals with such earnings and profits in terms of 'net earnings', 'net income', or 'net profits'."

6 G. B. R. Oil Corp. v. Commissioner, 40 B.T.A. 738; Joell Co. v. Commissioner, 41 B.T.A. 825; Brockway Glass Co. v. Commissioner, 43 B.T.A. 267; Baltimore Steam Packet Co. v. Commissioner, 44 B.T.A. 629; Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; N. O. Nelson Co. v. Commissioner, 45 B.T.A. 899; Carolina-Florida Realty Co. v. Commissioner, 46 B.T.A. 777, 778; Paris & Mt. Pleasant R. Co. v. Commissioner, 47 B.T.A. 439.

838

the earnings and profits, thus giving taxpayer a credit for payments made not out of earnings but out of receipts which, because applicable to expenses, may not be said to be earnings. While we agree that the statute must be strictly complied with, we are quite clear that this refinement carries the principle of strict compliance much too far. For upon a wholly impractical, if not impossible, hypothesis as to what might occur, it would deny a credit for payments made under provisions of a written contract which expressly deals with the disposition of earnings and profits of the taxable year.

On his second point, that the contract is within the statute because the provision for payment includes debts incurred after, as well as before, May 1, 1936, the collector stands no better. The fact that the provision of the contract obligates the earnings and profits to the payment of future, as well as past, indebtedness, does not in anywise prevent its being a complete compliance with the statute. The statute does not require that *all of the earnings and profits* of the taxable year be by the contract devoted to the payment of the debt it refers to. It requires that some of them be, and it gives credit to the extent that they are so applied. There was compliance with it here. The judgment was right. It is affirmed.