JAMES J. KOEHLER and ALICE M. KOEHLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Koehler v. Commissioner
Docket No. 8233-76.
United States Tax Court
T.C. Memo 1978-381; 1978 Tax Ct. Memo LEXIS 134; 37 T.C.M. (CCH) 1563; T.C.M. (RIA) 78381; September 25, 1978, Filed William C. Ruthford and Peter M. Lind, for the petitioners. Michael R. McMahon, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1973 and 1974 in the amounts of $ 978 and $ 8,333, respectively. All of the issues raised by the pleadings have been disposed of by the parties except whether the amount of $ 5,405.50 paid by petitioners in 1974, which was the amount of interest due on a mortgage on property they purchased, is deductible under section 163, I.R.C. 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, *135 husband and wife, who resided in Mesa, Washington at the time their petition in this case was filed, filed joint Federal income tax returns for the calendar years 1973 and 1974 with the Internal Revenue Service Center at Ogden, Utah. During the years 1973 and 1974, James J. Koehler (hereinafter petitioner) was a farmer in the Columbia Basin in the State of Washington. He farmed approximately 800 acres. In 1973 petitioner owned a little over 300 acres of the property he farmed and leased approximately 500 acres of property from a family by the name of Ricks. The leased property was Farm Units 100, 101, 102, 103 and 104, Final Plat of Irrigation Block 20, Columbia Basin Project. Under the terms of the lease petitioner had an option to purchase the property. The lease provided in this respect: At the termination of this Lease, February 1, 1978, Leasee [sic] shall have first right to purchase this farm. The price shall be $ 270,000. If land values should exceed 5% variation the farm can be reappraised by two licensed appraisers. One shall be chosen by the Leasor [sic], and one shall be chosen by the Leasee [sic]. The average of the appraisals shall be the sale price. *136 Terms shall be worked out and agreed upon at that time. By December 1, 1977, (sixty (60) days prior to termination of this Lease) Leasee [sic] shall send a letter to the Leasor [sic] stating his intentions to act upon the option to buy the farm or to terminate the Lease. The lease was for a term of 5 years at an annual rental of $ 26,000, payable half on April 1 and the other half on October 1 of 1973 and each year thereafter. Some time in the latter part of 1973 petitioner decided to purchase the property and informed the owners of his intention. On January 30, 1974, petitioner made an earnest money payment of $ 1,000 on the Ricks property. An "Earnest Money Receipt and Agreement" was executed by the parties. This agreement provided for a total purchase price of $ 270,000, payable $ 10,000 in cash including the earnest money and the balance-- at an annual amount that will service the mortgage to Travelers Insurance now on the property and retire any remaining balance in Five Years and include interest at 9%. The deed and sale agreement will be placed in escrow at the Connell branch of the Seattle 1st National Bank. The agreement provided that the purchaser shall *137 be entitled to possession on the date of closing and that-- Taxes for the current year, rents, insurance, interest, mortgage reserves, water and other utilities constituting liens shall be prorated as of date of closing. On December 3, 1973, Reed and Nadine Ricks, husband and wife, and Rulon and Melba Ricks, husband and wife, the then owners of Farm Units 100 through 104 of Irrigation Block 20, Columbia Basin Project, mortgaged this property to the Travelers Insurance Company, the face amount of the mortgage being $ 210,000. The mortgage note provided as follows with respect to payments on the mortgage: Interest only on April 1, 1974; Interest plus $ 6,300.00 on principal on April 1, 1975; and a like sum payable annually thereafter, to and including the first day of April, 1993; and a final installment payable on April 1, 1994, and comprising the payment in full and complete discharge of all sums then unpaid, including the entire principal balance, all accrued interest and any other items due hereunder. On April 1, 1974, interest in the amount of $ 5,405.50 accrued to Travelers Insurance Company in accordance with the provisions of the mortgage note for payment of interest *138 only until April 1, 1974. On April 11, 1974, Reed, Nadine, Rulon and Melba Ricks entered into a real estate contract in which they agreed to sell Farm Units 100 through 104 of Irrigation Block 20, Columbia Basin Project, to Stephen J., Gerard J., Joseph J., and Patricia M. Koehler. The Ricks were described in the contract as "seller" and the Koehlers as "purchaser." The terms and conditions of the contract with respect to payment were as follows: * * * The purchase price is TWO HUNDRED SEVENTY TWO THOUSAND ONE HUNDRED AND NO/100- - -($ 272,100.00) Dollars, of which TWELVE THOUSAND ONE HUNDRED AND NO/100 - - - ($ 12,100.00) Dollars have been paid, the receipt whereof is hereby acknowledged, and the balance of said purchase price shall be paid as follows: $ 50,000.00 plus interest at 9% per annum shall be payable at the rate of $ 12,854.50 per year commencing on the 1st day of April, 1975, and continuing annually on the 1st day of April of each consecutive year thereafter until both principal and interest shall have been paid in full. Said payments are to be applied first to interest and the balance to principal. Permission is granted to purchasers to make larger payments on *139 this portion of the purchase price at any time or to pay it in full and interest shall immediately cease on all payments so made. Interest to accrued from date of closing. $ 210,000.00 pursuant to the terms of the existing mortgage and note to The Travelers Insurance Company, which calls for annual payments of $ 25,200.00 per year which includes interest, which purchasers herein agree to assume and pay. The closing date was stated in the contract to be May 3, 1974. The contract further provided that-- The purchaser assumes and agrees to pay before delinquency all taxes and assessments that may as between grantor and grantee hereafter become a lien on said real estate; and if by the terms of this contract the purchaser has assumed payment of any mortgage, deed of trust, contract or other encumbrance, or has assumed payment of or agreed to purchase subject to any taxes or assessments now a lien on said real estate, the purchaser agrees to pay the same before delinquency. There were provisions with respect to the agreement of the purchaser to keep the buildings insured until the full purchase price was paid. The contract further provided that the purchaser assume all hazards *140 of damage to or destruction of any improvements on the property or hereafter placed thereon or the taking of a part of the property for public use. With respect to possession of the property the contract provided: Unless a different date is provided for herein, the purchaser shall be entitled to possession of said real estate on date of closing and to retain possession so long as purchaser is not in default hereunder. * * * The buyer's closing statement was as follows: ESCROW STATEMENT - KOEHLER, Stephen J., Gerard J., Joseph J., & Patricia M. PROPERTY: Farm Units 100, 101, 102, 103, & 104 Final Plat of Escrow No. EA 434-R Irrigation Block 20, Columbia Basin Project. BUYER
Sales Price
$ 272,100.00
Earnest Money Deposit $ 1,000.00
Real Estate Contract
50,000.00
Assumption of Existing Mortgage
210,000.00 * Pro Rate Fire Insurance * Pro Rate Taxes
Title Insurance - Owner's Policy
Sales Tax
806.40
Mortgagee's Policy
Sales Tax
Recording Fees
10.00
Revenue Stamps
210.00
Excise Tax
2,721.00
Escrow (Closing) Fee
Sales Tax
Sales Commission
2,700.00
Bank Escrow Fee
300.00
Attorney Fee
200.00 * Funds due to Close
18,047.40
$ 279,047.40
$ 279,047.40 * Subject to change with date
of closing
*141 Petitioner paid the $ 18,047.40 into an escrow account on April 24, 1974. The transaction was closed on May 3, 1974. On May 6, 1974, petitioner paid $ 5,405.50 to Travelers Insurance Company which he described on his books as an interest payment. Petitioners on their tax return for the calendar year 1974 as filed did not claim the $ 5,405.50 payment to Travelers Insurance Company as a deduction. However, during an audit of their tax return they prepared a further schedule of farm expenses and deductible payments which did include as a deduction the $ 5,405.50. Respondent in his notice of deficiency to petitioners actually increased the interest deduction claimed by petitioners on their original return, but in doing so did not allow the $ 5,405.50. The adjustment is explained in the notice of deficiency as follows: During 1974 you acquired five farm units of land in Irrigation Block 20, together with irrigation equipment located thereon. In connection with the purchase of the property you assumed a mortgage to Travelers Insurance Company on which interest of $ 5,405.50 had accrued prior to the date of your purchase of the property. It is held that the interest accrued *142 up to the date of purchase, and paid by you in 1974, represents a cost of acquiring the property and is not allowable as interest expense on your return. Summary of Adjustment - 1974
Interest expense per revised farm schedule
$ 20,031.00
Less: seller's interest expense not allowed
5,405.00
Interest expense determined
14,626.00
Interest expense claimed per return
13,562.00
Additional interest deduction
1,064.00
Section 163 provides for deduction by a taxpayer of all interest paid within the taxable year on indebtedness. Section 1.163-1(b), Income Tax Regs., provides in part as follows: Sec. 1.163-1 Interest deduction in general. * * *
(b) Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness. * * * Under the provisions of this regulation, as well as case law of long-standing, only interest paid on a mortgage on property for the period after the taxpayer becomes the legal or equitable owner of the property is deductible by the taxpayer as interest on *143 his indebtedness. Hyde v. Commissioner,64 T.C. 300, 306 (1975). If a taxpayer pays mortgage interest accrued prior to the date he became the legal or equitable owner of the mortgaged property the amount must be capitalized as part of his cost of the property. See Holdcroft Transp. Co. v. Commissioner,153 F.2d 323 (8th Cir. 1946); Joell Co. v. Commissioner,41 B.T.A. 825, 827 (1940); Cooledge v. Commissioner,40 B.T.A. 1325, 1328 (1939); John Hancock Mutual Life Insurance Co. v. Commissioner,10 B.T.A. 736, 740 (1928). As we pointed out in Baird v. Commissioner,68 T.C. 115, 124 (1977), a taxpayer becomes the equitable owner of property when he assumes the "benefits and burdens" of ownership. When a taxpayer has assumed the "benefits and burdens" of ownership is a question of fact in each case. In the Baird case we concluded that the taxpayer became the equitable owner of the property involved on the date an agreement of sale and leaseback of the property was signed. Petitioner here argues that under our holding in Baird v. Commissioner,supra, he was *144 the equitable owner of the Ricks' property after he made the earnest money payment on January 30, 1974. He argues that from that time forward he had the "benefits and burdens" of an owner. In our view the facts here do not support petitioner's contention. Petitioner did not assume the obligation to pay any of the expenses with respect to the property at the time he made the earnest money payment. In fact, the "Earnest Money Receipt and Agreement" specifically provided that taxes for the current year, rents, insurance, interest and mortgage reserves shall be prorated as of the date of closing. Although petitioner had possession of the property as a tenant, he was not entitled as owner to possession of the property until the date of closing. These facts are quite different from the facts in the Baird case. In that case as of the date the agreement of sale was signed the taxpayer was entitled to possession of the property as the purchaser and was responsible for taxes and other obligations with respect to the property. When the final agreement of conveyance of the property was entered into the price and terms of sale fixed by the initial agreement were carried out exactly *145 in accordance with the agreement of sale and the deed conveying the property was dated the date of the agreement of sale. In the instant case the amount paid for the property and the conditions of the sale as consummated differed from those set forth in the earnest money receipt and agreement. Although it is not completely clear from the record, apparently petitioner paid rent to the seller of the property up to the date of closing. None of the documents concerning the sale provided that petitioner would pay the mortgage interest accrued on the mortgage on April 1, 1974. In fact that only agreement entered into by the parties prior to April 11, 1974, in effect provided that petitioner would not pay that interest. In his testimony at the trial petitioner was unable to give any satisfactory explanation of why he did in fact pay that interest and when the understanding he would pay the amount was reached. Under the facts of this case we conclude that petitioner was a lessee of the property and had none of the burdens and benefits of an owner so as to make him an equitable owner of the property until after April 1, 1974, the date on which the $ 5,405.50 interest payment on the *146 mortgage accrued. We therefore hold that petitioner is not entitled to deduct as interest paid in the year 1974 the $ 5,405.50 paid by him on May 6, 1974, to Travelers Insurance Company. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩