HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* NORTHWEST STEEL ROLLING MILLS, INC.

No. 121. Argued October 23, 1940.—Decided November 12, 1940.

*Mr. Richard H. Demuth,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *L. W. Post* were on the brief, for petitioner.

*Mr. Walser S. Greathouse,* with whom *Mr. D. G. Eggerman* was on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Respondent corporation, because of a previously existing deficit, was prohibited by state law [1] from distributing

---

[1] "No corporation shall pay dividends . . . except from the surplus of the aggregate of its assets over the aggregate of its liabilities. . . ." Wash. Rev. Stat. Ann. (Remington, 1932), tit. 25, § 3803–24.

as dividends its profits earned in 1936. Notwithstanding this state prohibition, the Commissioner held respondent liable under the 1936 Revenue Act [2] for surtax on undistributed profits. The Board of Tax Appeals sustained the Commissioner; [3] the Circuit Court of Appeals reversed.[4] On a similar state of facts the Court of Appeals for the Eighth Circuit held undistributed profits taxable.[5] We granted certiorari in both cases to resolve this conflict.[6]

Section 14 of the 1936 Act imposed a general surtax on corporate profits earned but not distributed as dividends during the tax year. Section 26 (c) (1) of the Act relieved from such surtax all undistributed profits which the corporation could not distribute as dividends "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

The only "written contract executed by the corporation" upon which respondent relies for its claimed exemption is its corporate charter, granted by the State of Washington. Upon the premises that respondent's Washington charter was a written contract, and that the Washington laws prohibiting dividend payments were by operation of law a part of that contract, the court below concluded that the taxpayer had satisfied the requirements of § 26 (c) (1).

We must therefore decide whether § 26 (c) (1) authorized a credit or deduction to corporations prohibited by

---

[2] 49 Stat. 1648, 1655.

[3] The memorandum opinion of the Board is not officially reported; the Board relied on its earlier opinion in Crane-Johnson Co. v. Commissioner, 38 B. T. A. 1355.

[4] 110 F. 2d 286.

[5] *Crane-Johnson Co.* v. *Commissioner,* 105 F. 2d 740.

[6] 309 U. S. 692; *post,* p. 629.

state law from distributing dividends. And respondent strongly urges that the Act, if construed to deny such credit, is unconstitutional.

*First.* It is material that we are dealing here with a generally imposed surtax upon the undistributed net income of corporations, and that respondent's claim is for a credit in the nature of a specially permitted deduction. It has been said many times that provisions granting special tax exemptions are to be strictly construed.[7]

Measured by this sound standard it is probably not necessary to go beyond the plain words of § 26 (c) (1) in search of the legislative meaning. Certainly, at first blush, few would suppose that when Congress granted a special exemption to corporations whose dividend payments were prohibited by executed written contracts, it thereby intended to grant an exemption to corporations whose dividend payments were prohibited by state law. The natural impression conveyed by the words "written contract executed by the corporation" is that an explicit understanding has been reached, reduced to writing, signed and delivered. True, obligations not set out at length in a written contract may be incorporated by specific reference, or even by implication. But Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by adding a precautionary clause that the granted credit can only result from a provision which "expressly deals with the payment of dividends."

That the language used in § 26 (c) (1) does not authorize a credit for statutorily prohibited dividends is further supported by a consideration of § 26 (c) (2). By this section, a credit is allowed to corporations contractually

---

[7] E. g., *Deputy* v. *du Pont*, 308 U. S. 488, 493; *White* v. *United States*, 305 U. S. 281, 292; *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, 440.

obligated to set earnings aside for the payment of debts.[8] That this section referred to routine contracts dealing with ordinary debts and not to statutory obligations is obvious—yet the words used to indicate that the section had reference only to a "written contract executed by the corporation" are identical with those used in § 26 (c) (1). There is no reason to believe that Congress intended that a broader meaning be attached to these words as used in § 26 (c) (1) than attached to them under the necessary limitations of 26 (c) (2).

Respondent urges that the legislative history of § 26 (c) (1) supports its contention. But, on the contrary, that history points in the other direction. The original House Bill contained separate relief provisions (1) for deficit corporations such as respondent; (2) for corporations contractually obligated to pay debts; and (3) for corporations contractually prohibited from paying dividends.[9] The Senate Finance Committee struck out all three of these House provisions, but substituted an equivalent for the third.[10] An amendment from the Senate floor restored an equivalent of the second.[11] But the bill as finally passed contained no express relief provision relating to deficit corporations.

It is true, as respondent contends, that a charter has been judicially considered to be a contract insofar as it

---

[8] 49 Stat. 1664. The credit allowed is "An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside."

[9] H. R. 12395, 74th Cong., 2d Sess., §§ 14, 15, and 16; see H. Rep. No. 2475, 74th Cong., 2d Sess., pp. 8–9.

[10] See S. Rep. No. 2156, 74th Cong., 2d Sess., pp. 12–13, 15–16.

[11] 80 Cong. Rec. 9071, 74th Cong., 2d Sess.

grants rights, properties, privileges and franchises.[12] To this extent it has been said that an Act of Incorporation is a contract between the state and the stockholders.[13] But it does not follow that Congress intended to include corporate charters and related state laws in the cautiously limited area permissible for tax credits and deductions under this section. Nor have the courts considered that all the provisions of laws providing for the grant of corporate franchises are necessarily contractual in their nature. The same legislative Act is a law as well as a grant, and this Court has held that the same legislative enactment may be both a contract—which cannot be impaired—and a law, subject to repeal, modification, alteration, or amendment within the general legislative powers.[14] Respondent's chief reliance is upon that charter provision which required that it conform to the existing and future laws of Washington. But that provision is not a grant and is not a contract. With or without such a charter provision, it was the duty of the corporation to conform to valid Washington statutes. The corporation was subject to the law of Washington; it could not rise above it. A corporate charter to operate a particular business in a particular manner does not deprive the state of its inherent power of legislation touching corporate activities. And the grant of a franchise does not exempt the corporation from the requirement that it obey state legislation validly adopted in the interests of the public welfare.[15] It cannot be said, therefore, that the charter provision that the corporation should obey Washington law, including the statutory prohibition

---

[12] *Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 429.

[13] *The Binghamton Bridge*, 3 Wall. 51, 73.

[14] *Oregon & California Railroad Co.* v. *United States*, 238 U. S. 393, 427.

[15] *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322, 345.

against distributing dividends, was a provision of a written contract executed by respondent. More, the Constitution of the State of Washington under which the general corporation laws were enacted provides that "All laws relating to corporations may be altered, amended, or repealed by the legislature at any time, and all corporations doing business in this state may, as to such business, be regulated, limited, or restrained by law." [16] It is clear, therefore, that what prohibited respondent from distributing dividends was not the provision of an executed written contract expressly dealing with the payment of dividends. On the contrary, what prohibited respondent from paying dividends was a valid law of the State of Washington. [17]

*Second.* Respondent contends that the tax statute, as construed, offends the Fifth, Tenth and Sixteenth Amendments. None of those contentions is valid. [18]

It is argued that the Act offends the Due Process clause of the Fifth Amendment because it permits credits or deductions in the case of corporations restrained from a distribution of dividends under a given type of written contract, while not permitting any credit or deduction to corporations restrained from distribution by oral contracts or by the laws of a state. This contention is without merit. It is not necessary to point out the many obvious reasons that might underlie the distinctions here drawn in granting special deductions from a generally imposed tax.

Respondent also urges that the tax as applied to it amounts to a confiscation of its property without Due Process of law because the tax is imposed, not on income,

---

[16] Washington Constitution, Article 12, § 1.

[17] Respondent contended that the stock certificates satisfied the statutory requisites even if the charter did not; but what we have here said with respect to the charter applies equally to the certificates.

[18] Cf. *Helvering* v. *National Grocery Co.,* 304 U. S. 282.

but only on undistributed income, and that there can be no undistributed income so long as the corporation has an existing deficit. But the surtax here is imposed upon the undistributed net income of the corporation "for each taxable year." It is true that the surtax is imposed upon the annual income only if it is not distributed, but this does not serve to make it anything other than a true tax on income within the meaning of the Sixteenth Amendment. Nor is it true, as respondent urges, that because there might be an impairment of the capital stock, the tax on the current annual profit would be the equivalent of a tax upon capital. Whether there was an impairment of the capital stock or not, the tax here under consideration was imposed on profits earned during a definite period—a tax year—and therefore on profits constituting income within the meaning of the Sixteenth Amendment.

It is contended that the statute as here applied violates the Tenth Amendment because it interferes with the authority of the states to prescribe the powers of corporations and the conditions under which their powers may be exercised. But the statute in no way limits the powers of the corporation. It imposes a tax as authorized by the Sixteenth Amendment and does not infringe upon the powers reserved to the state by the Tenth Amendment.[19] The court below was in error; its judgment is reversed and the cause is remanded with directions to affirm the judgment of the Board of Tax Appeals.

*Reversed.*

---

[19] *Helvering* v. *National Grocery Co.,* supra, at 286–287. And cf. *Florida* v. *Mellon,* 273 U. S. 12, 17: "Congress cannot accommodate its legislation to the conflicting or dissimilar laws of the several states nor control the diverse conditions to be found in the various states which necessarily work unlike results from the enforcement of the same tax."