N. O. NELSON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104228. Promulgated December 9, 1941.

*Stanley S. Waite, Esq.*, for the petitioner.
*Carroll S. Walker, Esq.*, for the respondent.

### OPINION.

LEECH: The respondent determined deficiencies in income tax for the years 1936 and 1937 in the amounts of $4,434.30 and $27,624.21, respectively.

The only issue is whether, in computing its surtax on undistributed profits for 1936 and 1937, under section 14 of the Revenue Act of 1936, petitioner is entitled to a credit under section 26 (c) (1) or 26 (c) (2) of that act. Other adjustments made by respondent and assigned as errors were conceded by petitioner.

We find the facts as submitted by stipulation and exhibits. Petitioner, a corporation incorporated under the laws of Missouri on

June 28, 1934, was organized by the N. O. Nelson Manufacturing Co., a Missouri corporation, hereinafter called Manufacturing Co., for the purpose of continuing the business of the latter company in accordance with the terms of an agreement dated December 3, 1934, between the petitioner, the Manufacturing Co., and sundry creditors of the latter. It filed its income tax returns for 1936 and 1937 with the collector of internal revenue for the first collection district of Missouri.

Under the above mentioned agreement, the Manufacturing Co., which had executed a first mortgage deed of trust dated May 5, 1933, for the benefit of creditors, transferred certain of its assets, having a book value of $791,808.54, to petitioner in consideration of its entire authorized capital stock and the assumption by the petitioner of certain liabilities. The transaction became effective December 31, 1934, and the petitioner commenced operations January 1, 1935, with a capital stock of $100,000, divided into 1,000 shares of a par value of $100 each, and a capital surplus of $691,808.54.

In accordance with the agreement, Spang, Chalfant & Co. and the American Radiator & Standard Sanitary Corporation advanced petitioner cash and sold merchandise to it on credit amounting to $120,000 each by March 31, 1936. It was agreed that this indebtedness was to be evidenced by notes of petitioner and endorsed by the Manufacturing Co. It was further agreed that 50 percent of petitioner's capital stock was to be deposited with Spang, Chalfant & Co. and the other 50 percent with the American Radiator & Standard Sanitary Corporation as collateral to secure payment of merchandise purchased by petitioner on credit. The agreement also contained the following statement:

* * * All dividends, if any, upon said stock so deposited as collateral shall be paid only out of current earnings to the respective pledgees thereof to be applied on account of any indebtedness owing to them at the time of such payment. * * *

In order to secure additional time for the payment of this indebtedness, and for other purposes, an agreement dated January 21, 1936, was entered into between petitioner, the Manufacturing Co., the American Radiator & Standard Sanitary Corporation, Spang, Chalfant & Co., and the Mercantile-Commerce Bank & Trust Co., the latter acting for the creditors for whose benefit the mortgage deed of trust dated May 5, 1933, was executed. In accordance with the terms of this agreement, petitioner, on April 1, 1936, executed promissory notes in the amount of $120,000 each in favor of Spang, Chalfant & Co. and the American Radiator & Standard Sanitary Corporation, to evidence petitioner's indebtedness to those companies. Also, it provided that payments on the principal of the notes would not be enforced prior

to April 1, 1941. No payments were made thereon in 1936, but in 1937 $30,000 was paid on each note. This agreement further provided as follows:

6. (e) That all surplus funds not required for carrying on the business of N. O. Nelson Co. will be paid ratably to the American Radiator and Standard Sanitary Corporation and Spang, Chalfant and Co., Inc. and to the Mercantile-Commerce Bank and Trust Company, of St. Louis, on the notes of the N. O. Nelson Co., payable to the N. O. Nelson Manufacturing Company and pledged with the Trustee as additional security for the Mortgage Deed of Trust * * *.

9. The said agreement of December 3, 1934, * * * shall continue in full force and effect until April 1, 1941, and be in nowise altered, modified or impaired hereby, except to the extent that the same is hereby expressly modified.

As a result of cash loaned petitioner by the Manufacturing Co., beginning on or about January 1, 1935, by March 31, 1936, the former was indebted to the latter in the amount of $110,000. This indebtedness was evidenced by a promissory note of petitioner dated April 1, 1936, which was made payable to the Manufacturing Co., endorsed by it, and deposited with the Mercantile-Commerce Bank & Trust Co. as additional security under the mortgage deed of trust of May 5, 1933. No payments were made on this note in 1936, but $27,500 was paid to the Mercantile-Commerce Bank & Trust Co. in 1937.

For the calendar year 1935 petitioner sustained a loss of $61,156.14, and for the calendar years 1936 and 1937 realized net income in the respective amounts of $21,796.48 and $156,997.98, before provision for Federal and state income taxes. The capital surplus and earned surplus of petitioner on December 31, 1935, 1936, and 1937, were as follows:

| Year | Capital surplus | Earned surplus |
|------|----------------|----------------|
| 12/31/35 | $630,652.40 | —$61,156.14 |
| 12/31/36 | 649,975.34 | —41,833.60 |
| 12/31/37 | 691,808.54 | 92,774.68 |

Petitioner neither declared nor paid any dividends in 1936 and 1937.

Petitioner contends it is entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936 of its entire "adjusted net income" for each of the years in question, in computing its undistributed profits tax for those respective years since, it argues, none of that net income could have been distributed in either of those years "as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends." Its alternative position is that, in any event, in computing such tax for 1937, it is entitled to a credit for $87,500 which the petitioner actually paid Spang, Chalfant & Co., the American Radiator & Standard Sanitary Corporation, and the

Mercantile-Commerce Bank & Trust Co. during that year on account of its obligations to them, under the provisions of section 26 (c) (2) of the Revenue Act of 1936.

The original contract of December 3, 1934, provided that "All dividends, if any, upon said stock so deposited as collateral shall be paid only out of current earnings to the respective pledgees thereof to be applied on account of any indebtedness owing to them at the time of such payment." The amendment to this contract of January 21, 1936, continued the original agreement "in full force and effect * * * except to the extent that the same is hereby expressly modified" and provided "(e) That all surplus funds not required for carrying on the business of N. O. Nelson Co. [petitioner] will be paid ratably to [petitioner's creditors] * * *." If the provision in the original contract expressly referring to the payment of dividends survived at all in the quoted modification in the amendment of January 21, 1936, then as we understand petitioner's argument, "all the surplus funds of the petitioner," which necessarily included current earnings of each of the taxable years, would have had to go to its creditors by way of dividend distribution. Petitioner then says such distributions would not have constituted taxable dividends and that, since all other dividend distributions were by the same provision precluded, no taxable dividends could have been declared or paid out of the current earnings of either of the taxable years without violating such express provision of the contract. We disagree with petitioner.

The amended contract, which is controlling, eliminated the provision expressly referring to the payment of dividends in the original contract and required that "all surplus funds not required for carrying on [its] business" which, of course, included current earnings, were to be paid to petitioner's creditors, not as dividends assigned to those creditors by petitioner's sole shareholder, the Manufacturing Co., but as direct payments to them on account of petitioner's obligations. Petitioner argues that by so expressly limiting the use of current earnings to the payment of debts which undoubtedly existed during both of the taxable years, the use of those funds for any other purpose, one of which could have been the distribution of taxable dividends, was expressly precluded. The argument is not sound. It may well be that such limiting provision, thus construed, would preclude the distribution of taxable dividends. But that mandate would be a consequence, only, of the limitation expressed in the contract. That is to say, such a mandate would be implied from and not expressed in the contract. See *Wood* v. *United States*, 16 Peters, 342. Therefore such construction would not satisfy section 26 (c) (1). *Helvering* v. *Moloney Electric Co.*, 120 Fed. (2d) 617, reversing 42 B. T. A. 78; *Sandura Co.*, 45 B. T. A. 491.

On the alternative issue, is petitioner entitled to a credit for $87,500, the total of the amounts paid to creditors during 1937, under section 26 (c) (2) of the Revenue Act of 1936?[1] We think it is.

The written contract, as amended on January 21, 1936, provided that "all surplus funds not required for carrying on [its] business" were to be paid ratably to the named creditors. This is categorical as to those funds. They can be appropriated or used for no other purpose. They must be so used or set aside for that use currently when they arise. Petitioner did both. It set them aside by actual payment. The expression "all surplus funds" certainly includes earnings and profits. *G. B. R. Oil Corporation*, 40 B. T. A. 738, and *Michigan Silica Co.*, 41 B. T. A. 511 (on appeal, C. C. A., 6th Cir.).

Under the limitation that only such funds as are "not required for carrying on [petitioner's] business" are to be so paid may give petitioner some latitude in determining the amount to be thus used. But petitioner, in making payment, has in fact fixed that amount and it has been paid as "required" by the contract. Surely the payment of that amount, at least, was "required." We reverse the respondent and allow the contested credit of $87,500 under section 26 (c) (2) of the Revenue Act of 1936, *supra*.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN dissents.

---

DISNEY, dissenting: I must disagree with the conclusion to which majority come, in allowing the petitioner credit for the amount actually paid its creditors during 1937 from earnings and profits. I find in the contract relied upon no provision which in my opinion satisfies section 26 (c) (2) of the Revenue Act of 1936. The contractual provision upon which the majority opinion in this respect is based is that "all surplus funds not required for carrying on the business of

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

N. O. Nelson Co. [petitioner] will be paid ratably to [petitioner's creditors] * * *." The statutory requisite is that a written contract expressly dealing with disposition of earnings and profits of the taxable year shall *require* earnings and profits to be paid in discharge of, or irrevocably set aside for the discharge of, a debt. In my opinion the above quoted language contains no such requirement. It seems to me plain that the petitioner was, by the above quoted contractual provision, in no wise *required* either to pay or to set aside for payment any earnings and profits; but that on the contrary it was allowed to use all of such earnings and profits and other funds to carry on its business. Only above the amount required for business purposes is there any provision as to payment. This leaves the matter discretionary with the petitioner. It may or may not pay upon its debt, for the amount it may use for carrying on business is not limited. I do not think that it is within the intendment of section 26 (c) (2) that such discretion be left in the applicant for credit. My conception of that section is that the taxpayer must either distribute the earnings and profits, rendering them taxable to its stockholders, or retain them and pay the tax, or show that it is prevented by a contract from paying out such funds—in other words, that its creditors, and not the corporation, control the situation. Otherwise no reason appears for granting the credit. The mere fact that debts are paid, out of earnings and profits, does not give credit under section 26 (c) (2). Congress limited the credit to debts paid under the sanction of a contract, and a contract executed prior to a certain date. Only the impact of the contract, taking from the taxpayer its control over the earnings and profits, is sufficient foundation for the credit. Here the taxpayer was completely in control, for it could use all of its funds in carrying on its business. It will not do, I think, to say that only some reasonable amount might be used to carry on business and that the remainder was so subject to the demand of creditors as to be within the purview of section 26 (c) (2). In the first place, the contract does not so limit the matter, does not say "*reasonably* required for carrying on the business"; and in the second place, in the absence of a contractual provision limiting the amount used to carry on business, to a reasonable amount of earnings and profits, I can not subscribe to any theory that a court at the behest of creditors would so far interfere with the internal affairs of a corporation as to limit the amount of business it might carry on. Courts both hesitate to interfere in internal corporate affairs, and refuse to make contracts for those who do not see fit to make them for themselves. To say that the petitioner could be prevented by the creditors from spending more than some reasonable amount in carrying on business would be to say to a large degree that its business must remain static and could

not be expanded because of the indefinite contractual provision above quoted, which does not even contain the words *"reasonably* required." By what criterion shall we say (or could a court say in a suit by the creditors) that the petitioner's business activities shall be limited so that the surplus above its expenses in such activities is subject to section 26 (c) (2)? Surely it could not be said that the petitioner could do no further business than it did the year before. New circumstances, new opportunities to make money might so open up that the corporate officials would be derelict in their duty to the stockholders if they did not devote all of the earnings and profits and other funds to the carrying on and expense of business. Current history in many industries serves amply to demonstrate the thought. I find it impossible to believe that the creditors could prevail upon any court to limit the activities of the corporation and its use of its earnings and profits, under the above quoted contractual provision, in the face of a contention by the corporation that it was actually using the funds in business, within the judgment and discretion of the corporate officers. Yet control by the creditors seems to me to be the test.

The majority opinion seems to hold that the contract, within the purview of section 26 (c) (2), does control and "require" the payment because the corporation made a determination, by paying the amount of $87,500, that that amount was "surplus funds." This seems to me to beg the question. The contract did not require the corporate officers to make any such determination, but left the matter as above discussed within their discretion. Thus we discern that it was not the contract and its impelling force which caused the payment of the $87,500 and any determination latent therein that that amount was "surplus funds", but that such result merely arises from the discretion and control left in the corporation. That control as I see it must be outside of the corporation and lodged in the creditors. Otherwise we have a situation where the corporation can at its will control the matter of the credit it shall receive under section 26 (c) (2). This I conceive to be directly inimical to the intendment of that section. As above discussed, the mere fact of payment of the debt by no means entitles the corporation to credit under section 26 (c) (2); yet the majority conclusion is in effect merely that payment, voluntary and discretionary, satisfies the statute. The contract did not require it and, in my opinion, the credit is therefore not properly allowed. In *Dr. Pepper Bottling Co. of Memphis, Inc.*, 45 B. T. A. 540, we said in a matter in principle analogous to this:

* * * Thus it appears that it is not the contract, but the manner in which the petitioner transacted the matter of its discharge by the use of income, that prevents the distribution of dividends to the extent of the $29,924.38 here involved only because it was in fact paid from the petitioner's only income. * * *

I regard it as contrary to the objectives of section 26 (c) (2) to allow the discretion of the corporate officers as to payment of its earnings and profits to control as to whether credit shall be obtained in the taxable year. I therefore respectfully dissent.

MURDOCK and HILL agree with this dissent.