## WARREN TEL. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9014.

Circuit Court of Appeals, Sixth Circuit.

June 2, 1942.

504

H. H. Hoppe, of Warren, Ohio, for petitioner.

Samuel H. Levy, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, J. Louis Monarch, Gerald L. Wallace, and William L. Cary, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, SIMONS, AND MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant sought redetermination before the Board of Tax Appeals of its 1936 income tax, seeking to set aside respondent's determination that it was subject to surtaxes on profits earned but not distributed as dividends during the tax year, by virtue of § 14 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts page 823, without being entitled to credit under the provisions of § 26(c) (1), 26 U.S.C.A. Int. Rev.Acts, page 836. The Board sustained the respondent and the taxpayer seeks review.

Section 14 imposes a general surtax on corporate profits earned but not distributed, but § 26(c) (1) relieves from such surtax all undistributed profits which the corporation could not distribute as dividends "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends." The appellant had a substantial net income in the taxable year, but claimed the credit permitted by § 26(c) (1) for the reason that in the beginning of the year it had a deficit in capital account, and after applying earnings for 1936 it had still a substantial deficit which prevented it from distributing any part of its adjusted net income without violating express provisions of written contracts executed by the corporation prior to May 1, 1936, dealing expressly with payment of dividends.

The appellant is a public utility of Ohio, and by deed of trust executed September 24, 1928, to secure an issue of first mortgage bonds, assumed obligations not to declare or pay dividends on its capital stock at any time outstanding "except out of net earnings remaining after payment of all

fixed charges, and after payment of all accrued installments of interest and sinking fund, if any, and maintenance fund in respect of bonds hereby secured and interest on all other funded and unfunded indebtedness." It also covenanted that it would preserve and maintain all the rights, privileges and franchises granted to and conferred upon it, and would comply with all lawful statutes, acts and regulations affecting it or the mortgaged property. Its amended articles of incorporation provided that its preferred stock should contain a provision that holders are entitled to receive yearly dividends from "surplus or net profits," which should be cumulative and payable before any dividend on common stock should be paid, and subject to this provision dividends might be declared and paid on common stock out of "the remaining surplus or net profits of the company." Its stock certificates contained, on their face, a reference to the dividend provision of the articles of incorporation, and on their reverse side the restriction that dividends were payable from surplus or net profits.

In respect to earnings for 1936, the taxpayer was advised by the trustees under its trust indenture, that the payment of a dividend out of such earnings would constitute a violation of its provisions. The Public Utilities Commission of Ohio had previously, in 1933, ordered the taxpayer to cease and desist from paying dividends until available from corporate net operating income. The statute of Ohio, G.C. 8623-38, permits dividends to be paid from the excess of assets over liabilities and capital, but the Public Utilities Commission of Ohio had concluded that the taxpayer had been operating on a capital deficit for the five year period 1928 to 1932, during which it had paid dividends notwithstanding there was no earned surplus out of which they could legally be paid; that the directors had diverted from the depreciation reserve account the accumulated depreciation reserve, made false entries on the taxpayer's books, paid excessive fees to the Middle Western Telephone Company, and, unless prevented, would declare and pay further unearned dividends, and so ordered the restoration of improperly declared and paid dividends prior to 1932, and restricted the payment of further dividends until they were available out of net operating income.

In Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29, and its companion case, Crane-Johnson Co. v. Helvering, 311 U.S. 54, 61 S.Ct. 114, 85 L.Ed. 35, the Supreme Court reached the conclusion that under the plain words of § 26(c) (1), the Congress did not grant a special exemption to corporations in situations where dividend payments were prohibited by state law. It also held that the Congress did not intend to include corporate charters in the cautiously limited area permissible for tax credits and deductions under this section. It pointed out that a covenant in a written contract that a corporation would comply with all lawful statutes and regulations affecting it or its property, added nothing to the obligation of the corporation because with or without such provision it was subject to the law of the state of its incorporation, so that such covenant written into a contract was not a contractual prohibition against paying dividends.

The appellant, however, distinguishes its situation from that of the taxpayers in the cited cases, by pointing to its deed of trust as a written contract executed with the trustees and bondholders, prohibiting the payment of dividends except out of net earnings remaining after payment of all fixed charges. It says that the fact that it had paid a normal income tax in 1936 is no proof that it had earnings from which dividends could be paid without violating its commitments under the trust indenture, or its obligation to comply with the order of the Ohio Public Utilities Commission, and it undertakes to demonstrate that neither under the terms of its indenture nor the order of the Commission, could it have paid dividends except out of an accumulated surplus or accumulated net profits, of which it had none. The respondent's contention is that the payment of dividends from net income was permissible under the provisions of the indenture, the amended articles of incorporation, its stock certificate obligations, and the order of the Ohio Commission, and that all that is necessary to be shown is that there were net earnings beyond the customary annual charges.

The court, in the Northwest Steel Rolling Mills case [311 U.S. 46, 61 S.Ct. 112, 85 L.Ed. 29], after pointing out that the credit permitted under § 26(c) (1) is a special tax exemption to be strictly construed, reasoned that by the section "a credit is allowed to corporations contractually obligated to set earnings aside for the payment of debts," and that the

section refers to "routine contracts dealing with ordinary debts and not to statutory obligations." We may therefore conclude, without discussion, that the provisions in the taxpayer's charter do not constitute a written contract signed and executed by the corporation, which, under the statute as interpreted, must exist to make available to the taxpayer the exemption permitted by § 26(c) (1), and whether the dividends would or would not be payable under the terms of the Commission's order, is not material, because of the holding that the statute does not extend the exemption to dividends prohibited by state law. The commitments contained in the stock certificates are but references to and repetitions of the charter provisions, and stand on no higher ground. Moreover, they are not contracts entered into by the corporation with creditors and are but internal agreements within the framework of corporate organization, and impose no external prohibition upon the corporation in respect to dividends.

■ This view is not in accord with that of the Third Circuit Court of Appeals in Lehigh Structural Steel Co. v. Commissioner, 3 Cir., 127 F.2d 67, decided March 27, 1942. The court there reasoned that while it was logical to exclude from within the connotation of contract as the term is used in § 26(c) (1), a charter or stock certificate which contains no restraint upon the payment of dividends and may be so interpreted only by reading into it state law, it does not follow that a charter or certificate which expressly restrains payment of dividends may not be a written contract within the meaning of the section. In our view, the rationale of the Northwest Steel Rolling Mills case is broader than that. The Lehigh case overlooks the interpretation that the section refers "to routine contracts dealing with ordinary debts." Having in mind its legislative history and the apparent purpose of the Congress to exempt corporations from the imposition of the tax upon deferred dividends only when the corporation has put it beyond its power to declare them by prior contract obligation to creditors (not stockholders), we hold the present issue to be controlled by the Northwest Steel Rolling Mills case.

■ There remain the provisions of the trust indenture. These are undoubtedly contract obligations within the meaning of the statute, but we are not persuaded that they prohibit the payment of dividends in the situation the taxpayer found itself upon the termination of the tax year. The taxpayer had assumed an obligation to refrain from paying dividends except from surplus or net profits. That there were such net profits is proved, if not, indeed, conceded. There is no obligation expressly undertaken by the taxpayer to refrain from declaring and paying dividends until such time as it had restored its capital deficit and had an accumulated surplus, and as against the government in the exercise of its taxing authority, no persuasive reason appears why such obligation must be implied. We may not forget that specifically we are concerned not with the imposition of a tax, but with a claim to exemption therefrom, and that the taxpayer must bring itself clearly within the express terms of the statute in order that it be entitled to the grant. The assertion by the trustees that they would treat the declaration of dividends by the taxpayer as a breach of the provisions of the trust, is, of course, not conclusive upon the taxpayer's obligations under the instrument, and in any event cannot bind the government.

The decision of the Board of Tax Appeals is affirmed.