## BUFFALO SLAG CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 20.

Circuit Court of Appeals, Second Circuit.

Nov. 30, 1942.

O'Brian, Hellings, Ulsh & Morey of Buffalo, N. Y. (J. Ralph Ulsh and T. Kayler Jenkins, both of Buffalo, N. Y., of counsel) for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key, Gerald L. Wallace, and Warren F. Wattles, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

Petitioner is a New York corporation in the business of preparing and marketing blast furnace slag, sand and gravel. In 1932 the company was directly indebted to the M. & T. Trust Company, a bank, and it was indebted to the same organization in a considerable amount as the endorser of

the notes of other corporations. In negotiating for the continuance of existing credit and the granting of a further loan the directors of the Buffalo Slag Company executed and delivered to the bank the agreement described below. The agreement provided that "no check, note, trade acceptance or other order or promise for the payment of money be made, drawn, signed, endorsed or accepted" by the company without the approval of a comptroller who was placed in the company by the bank. In return the bank extended further credit and refrained from pressing outstanding claims. Also relevant to the credit claimed by the Buffalo Slag Company is a provision appearing on the stock certificates of the company for the creation of a sinking fund for the redemption of preferred shares by setting aside two cents per ton on all slag sold by the company.

Admittedly the company had undistributed net income for the years 1936 and 1937, the years in controversy. But the company claims that it was entitled to a credit because of § 26(c) (1), 26 U.S.C.A. Int.Rev. Acts, page 836, which provides in part:

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

■ Whether or not the petitioner can succeed depends upon the strictness with which we ought to construe the phrase "expressly deals with the payment of dividends." Being an exemption it should be closely held to its narrow limits as Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29, shows in applying that general principle to this particular section of the statute. It is fair to argue that a dividend is a disbursement and that the contract between the Buffalo Slag Company and the bank includes dividends since the contract expressly deals with disbursements. But the word "expressly" has been high-lighted beyond that interpretation by the way § 26 was put together. Congress enacted § 26(c) (1) to provide credits for dividends which could be paid but for the fact that the taxpayer had "expressly" agreed before May 1, 1936 not to pay them and in subdivision (c) (2) of the same section like provision was made for credits for debts which the taxpayer had similarly agreed to pay.

■■ The purpose in so selecting from the general class of disbursements was evidently to limit the privilege extended the taxpayer on the one hand to instances where its ability to obtain a credit by declaring and paying dividends had been impaired by an agreement of the requisite age and of such explicit reference to dividends that its inability to avoid the surtax burden in the ordinary way was perfectly clear; and on the other hand to instances where it was equally clear that profits which might otherwise have been distributed as dividends had been used to avoid breaking a contract in existence for the stated time which required their application to the payment of debts. It would unduly stretch the guarded language of the statute to say that Congress intended to allow a credit whenever a contract of sufficient age and scope prevented the declaration of a dividend without violation of its general terms, even though the taxpayer's inability to take the steps necessary to entitle it to a credit was as great, as indeed it was here, as it would have been had the contract prohibited the declaration and payment of dividends in so many words. The allowance of these credits is an act of grace by Congress like the allowance of other deductions from gross income and we have no right to extend its generosity beyond the point it fixed. The resulting benefit to the taxpayer is in each instance a diminution of the amount of otherwise taxable income to the extent only that Congress saw fit, for whatever reason, to permit. To take advantage of the privilege a taxpayer must show that all the statutory conditions precedent by which it may be restricted have been fulfilled. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128. Under these applicable principles of construction, this taxpayer has been unable to bring itself within the close limits of the privilege and consequently is not within the statute at all.

■ The provisions for the creation of a sinking fund for the stock certificates will not serve as the basis for the allowance of surtax credits for the same reasons. That is also why Lehigh Structural Steel Company v. Commissioner, 3 Cir., 127 F.2d 67, does not apply to the situation here.

Affirmed.