**HELVERING v. N. O. NELSON CO.**
No. 12298.
No. 12297.
**N. O. NELSON CO. v. HELVERING.**
Nos. 12297, 12298.

Circuit Court of Appeals, Eighth Circuit.

Feb. 23, 1943.

Rehearing Denied March 16, 1943.

Arnold Just, of St. Louis, Mo. (Abraham Lowenhaupt, Stanley S. Waite, H. M. Stolar, and Lowenhaupt, Waite & Stolar, all of St. Louis, Mo., on the brief), for N. O. Nelson Company.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for Guy T. Helvering, Commissioner of Internal Revenue.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

In the two cases here presented cross-petitions were filed to review a decision of the United States Board of Tax Appeals, 45 B.T.A. 899. In No. 12,298 the taxpayer, N. O. Nelson Company, seeks reversal of that part. of the decision holding that in computing income taxes for the years 1936 and 1937 the company is not entitled to the credit authorized by § 26(c) (1) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 836, which grants a deduction from the tax imposed upon undistributed profits by § 14 of the Act, 26 U.S.C.A. Int.Rev.Acts, page 823. The Commissioner, in No. 12,297, seeks reversal of that part of the decision holding that the taxpayer is entitled to a credit in the amount of $87,500 under § 26(c) (2) of the Act in computing its surtax for the year 1937.

The facts are stipulated. The taxpayer, incorporated under the laws of Missouri in 1934, was organized by the N. O. Nelson Manufacturing Company to continue its business in accordance with the terms of an agreement dated December 3, 1934, between the taxpayer, the Manufacturing Company, and sundry creditors of the latter.

Under the terms of the agreement the Manufacturing Company transferred certain of its assets with a book value of $791,808.54 to the taxpayer in consideration of its entire capital stock and assumption of certain liabilities. The transaction became effective December 31, 1934, and the taxpayer commenced operations January 1, 1935, with a capital stock of $100,000 and a capital surplus of $691,808.54.

In accordance with the terms of the agreement, by March 1, 1936, cash and credit were advanced to the taxpayer by Spang, Chalfant & Company and the American Radiator & Standard Sanitary Corporation amounting to $120,000 each. This indebtedness was evidenced by the notes of the taxpayer endorsed by the Manufacturing Company. Fifty per cent of the capital stock of the taxpayer was deposited with each of these creditors as collateral to secure payment of credit extended for merchandise purchased.

A second agreement dated January 21, 1936, was entered into by the taxpayer with the Manufacturing Company, the two creditors named above, and the Mercantile-Commerce Bank and Trust Company, trustee under a mortgage given by the Manufacturing Company on May 5, 1933, for the benefit of creditors. On April 1, 1936, under the second agreement the taxpayer executed new notes of $120,000 each to its two above-named creditors. This agreement provided that payments on the principal of these notes would not be enforced prior to April 1, 1941.

On April 1, 1936, in consideration of cash loaned, the taxpayer gave the Manufacturing Company its note for $110,000, which note was endorsed by the payee and deposited as additional security with the trustee under the mortgage of May 5, 1933.

During 1936 no payments were made by the taxpayer on its outstanding notes, but in 1937 payments of $30,000 each were made on the two $120,000 notes and of $27,500 on the $110,000 note, so that the payments in 1937 on note obligations aggregated $87,500.

For the calendar year 1935 the taxpayer sustained a loss of $61,156, for the year 1936 it realized an income of $21,796.48, and in 1937 of $156,997.98, before provision for federal and state income taxes. No dividends were declared nor paid in 1936 and 1937.

The taxpayer claims a credit under § 26 (c) (1) of the Revenue Act of 1936 of its entire "adjusted net income" for the years 1936 and 1937 in computing its undistributed profits tax, on the ground that none of such net income could have been distributed in either year "as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

In the alternative the taxpayer claims that, in any event, in computing such tax for 1937, it is entitled to a credit for $87,500 under § 26(c) (2) of the Act, the amount actually paid on its note obligations in that year.

The Board denied the taxpayer's claim under § 26(c) (1) and granted the claimed credit for 1937 under § 26(c) (2).

The contract provisions relied upon by the taxpayer on both appeals are found in the two agreements referred to above. The agreement of December 3, 1934, after providing for the pledge of the taxpayer's stock to secure credit for merchandise, reads: "All dividends, if any, upon said stock so deposited as collateral shall be paid only out of current earnings to the respective pledgees thereof to be applied on account of any indebtedness owing to them at the time of such payment."

And the agreement of January 21, 1936, provides:

"6. (e) That all surplus funds not required for carrying on the business of N. O. Nelson Co. will be paid ratably to the American Radiator and Standard Sanitary Corporation and Spang, Chalfant & Co., Inc. and to the Mercantile-Commerce Bank and Trust Company of St. Louis, on the notes of the N. O. Nelson Co., payable to the N. O. Nelson Manufacturing Company and pledged with the Trustee as additional security for the Mortgage Deed of Trust provided for and described in paragraph 2 hereof.

\* \* \* \* \* \*

"9. The said agreement of December 3, 1934, Exhibit A hereto, shall continue in full force and effect until April 1, 1941, and be in nowise altered, modified or impaired hereby, except to the extent that the same is hereby expressly modified."

Considering first the taxpayer's claimed credit under § 26(c) (1), it will be noted that the provision of the agreement of December 3, 1934, relied upon, is dated prior to May 1, 1936, and "expressly deals with the payment of dividends", and that the provisions of the contract of January 21, 1936, do not mention dividends. The Board found that the latter contract and the former deal with the same subject matter and that the latter is an amendment to the first; that the amended contract, which is controlling, eliminated the provision expressly referring to the payment of dividends in the original contract and required that "all

surplus funds not required for carrying on [its] business", "which * * * included current earnings", be paid to creditors on the taxpayer's obligations. As so amended the contract did not "expressly" prohibit the payment of dividends.

The taxpayer contends that the two contracts must be read together; that so construed they "expressly" prohibit the payment of any dividends; that the only change effected by the amendment was to require the surplus funds, including current earnings, to be paid to three instead of to two creditors.

■■ This contention is without merit. The provision of the second contract relied upon does not "expressly" prohibit the payment of dividends, and an implied prohibition is not available to the taxpayer. Helvering v. Northwest Steel Mills, 311 U. S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; Helvering v. Ohio Leather Co., 63 S.Ct. 103, 87 L.Ed. ——; Hobbs-Western Company v. Commissioner, 8 Cir., 133 F.2d 165, decided December 8, 1942. The first contract expressly permitted the payment of dividends; it did not prohibit them. The fact that dividends, if declared, were payable to the pledgees of the taxpayer's stock instead of to the stockholder is immaterial. Oviatt's v. Commissioner, 9 Cir., 128 F.2d 352, 354; United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20, 27; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 84 L.Ed. 731. The burden was on the taxpayer to show compliance with the exact terms of the statute. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Helvering v. Ohio Leather Co., supra; Helvering v. Moloney Electric Co., 8 Cir., 120 F.2d 617. This it has failed to do.

On the Commissioner's appeal the Board found that the written contract of January 21, 1936, providing that "all surplus funds not required for carrying on the business of N. O. Nelson Co. will be paid ratably" to the creditors, satisfied the requirements of § 26(c) (2) and entitled the taxpayer to a credit for the year 1937 to the extent of the $87,500 actually paid to its creditors in that year.

The decision of the Board was promulgated on December 9, 1941. The decision of the Supreme Court in Helvering v. Ohio Leather Co., supra, was not delivered until November 9, 1942. The latter opinion [63 S.Ct. 106, 87 L.Ed. ——] construes § 26(c) (2) of the Act, pointing out that "the tax-

payer must sustain the burden of showing compliance with its exact terms" to be entitled to the special credit which the statute grants. The Supreme Court had previously held in Helvering v. Northwest Steel Mills, supra, that the word "expressly" in the statute must be construed literally, and that a contract which meets the requirements of the statute only by "implication" is not sufficient compliance.

Section 26(c) (2) grants a credit only for "An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt."

■■ The contract relied upon contains no express provision requiring the earnings and profits of the taxable year "to be paid within the taxable year in discharge of a debt." The language of the contract is that "all surplus funds not required for carrying on the business * * * *will be paid* ratably to" the creditors. (Italics supplied). When the payments shall be made is not specified. Impliedly the amount of the surplus funds must be determined and the payments then made only after the officers of the corporation have determined and deducted the amount "required for carrying on the business" for some unspecified period. No provision states when the computation or the payments are to be made—whether annually, semiannually or quarterly; whether at the end of the taxable year or at the beginning of the year following; whether when interest payments are due on the notes or at their maturity. The question is not whether the taxpayer "made payment * * * within the taxable year, but whether their contracts required them to pay or irrevocably set aside within the taxable year." Helvering v. Ohio Leather Co., supra. The debts to which the payments are made applicable are all evidenced by promissory notes, none of which matured in 1937, the taxable year. Interest-paying dates are fixed in the contract. No other dates are fixed on which the creditors may enforce payments. Since the contract does not fix the time when the officers of the taxpayer corporation shall determine the amount "re-

850

quired for carrying on the business", deduct such amount from the "surplus funds" and pay the balance "ratably" to the holders of the notes, the contract fails to comply with the statute by requiring the "earnings and profits of the taxable year to be paid within the taxable year in discharge of a debt."

Nor does the contract contain a provision requiring the irrevocable setting aside of earnings and profits within the taxable year for the discharge of a debt within the meaning of § 26(c) (2). No mention is made of the setting aside of any fund. In fact, no claim is made that the contract requires the physical segregation of the earnings within the taxable year for the discharge of a debt in the future. In this regard, however, the statute requires a contract containing the same express, exact and explicit direction for setting aside earnings within the taxable year as it does for payments in discharge of a debt within the taxable year.

■ Finally, the statute requires that the provision of the contract must "expressly" deal "with the disposition of earnings and profits of the taxable year." It is contended that this requirement of the statute is complied with by the provision that "all surplus funds will be paid" to the creditors. The argument is that "surplus funds", under the circumstances of this case, can mean only the earnings and profits of the taxable year. Reliance is placed upon such cases as Commissioner v. Strong Mfg. Company, 6 Cir., 124 F.2d 360. But that decision was reversed by the Supreme Court in connection with the Ohio Leather Company case, supra. The term "surplus funds" is not defined in the contract and its meaning is ambiguous. The Commissioner argues that it means capital surplus and the Board held that it includes both capital surplus and current net earnings. Cf. Hobbs-Western Company v. Commissioner, supra. The requirement that the contract must deal "expressly" with the disposition of "earnings and profits of the taxable year" cannot be satisfied by "implication" or inference. The provision must be specific. Nothing less satisfies the requirements of the statute.

For the foregoing reasons the decision is affirmed on the petition of the taxpayer in No. 12,298 and reversed on the petition of the Commissioner in No. 12,297, and the case is remanded for further proceedings consistent with this opinion.