COMMISSIONER OF INTERNAL REVENUE v. JOHN A. WATHEN DISTILLERY CO.

No. 9715.

Circuit Court of Appeals, Sixth Circuit.

Feb. 14, 1945.

McALLISTER, Circuit Judge, dissenting.

---◇---

Helen Goodner, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Muriel S. Paul, all of Washington, D. C., on the brief), for petitioner.

John E. Tarrant, of Louisville, Ky. (John E. Tarrant, Arthur W. Grafton, and Earl S. Wilson, all of Louisville, Ky., Ogden Galphin, Tarrant & Street, and Grafton & Grafton, all of Louisville, Ky., on the brief), for respondent.

Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

HICKS, Circuit Judge.

Petition to review a decision of the Tax Court that there were no deficiencies in respondent's income taxes for the years 1936 and 1937. The Commissioner had asserted deficiencies for these years of $100,751.67 and $37,182.72, respectively, as surtaxes on undistributed profits.

Respondent, a corporation organized under the laws of Missouri, and having its principal place of business in Louisville, Ky., engaged in 1934 in the business of distilling whiskey, with a paid in capital of $125,000.00. This amount was insufficient to pay for the plant, to say nothing of operating expenses.

From time to time respondent expanded its capacity from the original 30 barrels to 210 barrels per day. Some of its product was sold to customers but much of it was stored for aging and subsequently sold under its own brand. Because of large outlays for expansion, operating cost incident to increased production and its whiskey aging program, respondent in the spring of 1935 needed larger bank credit than it could obtain at Louisville, and Harris, its president, and Kaplan, a director, conferred with Van Lahr and Hey, president and assistant treasurer of Provident Savings Bank & Trust Company, herein called Provident, at Cincinnati. These officers advised Harris and Kaplan that Provident would lend respondent money only on condition that it enter into a written contract with Provident not to pay dividends without Provident's permission while it owed Provident money. Harris and Kaplan returned to Louisvillle and conferred with their associates, who consented to such an agreement. On the next day, April 29, 1935, Harris wrote Provident a letter, the pertinent paragraphs of which are:

"Confirming conversation held with you with reference to the surplus of this company, wish to state that it is not the intention of the officers and directors of this company to pay any part of this surplus out to stockholders. We furthermore, desire to state that we have no intention of declaring any dividend until such time as the borrowings of this company have been materially reduced.

"*We might also state that we will not declare any dividend in the future, while indebted to your bank, without first consulting you.*" (Italics ours.)

On the strength of this letter Provident extended respondent a $50,000 line of credit and loaned it $25,000. Other banks, advised of this letter, made loans to respondent without requiring any promises in writting, although there were oral agreements similar to that embodied in the letter. The letter itself was the only writing which referred to the subject of dividend payments by respondent.

In the years 1936 and 1937, respondent never at any time had large amounts of cash on hand. The greatest amount it had on any one date in 1936 was $47,476.33 and in that year the lowest amounts on any one day of its loans from Provident and other banks were $66,797.93 and $287,928.12, respectively. In 1937, its greatest accumulation of cash on any one day was $76,872.34 and its lowest indebtedness to Provident and the other banks was, respectively, $63,004.80 and $341,075.04. On December 16, 1936, when respondent broached to the banks the matter of paying a dividend, it reported earnings of $550,000 net for the twelve months ending Decem-

ber 31, 1936. The banks, however, withheld approval of the suggested dividend payment. Provident wrote that such a distribution would decrease working capital and work a hardship on the operation of the business. Another bank was of the opinion that the $550,000 did not actually represent earnings until a large volunme of time paper had been collected, etc. In the face of these disapprovals, no dividends were paid. .

These are the essential facts found by the Tax Court and concerning which there is no dispute.

. The court held that the letter of April 29, 1935, coupled with acceptance of its terms by Provident and the immediate granting of credit to respondent, constituted a written contract prohibiting the payment of dividends within the meaning of Sec. 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts.[1] Five of the judges were of a contrary opinion. If the former view is correct, the surtaxes were not collectible. Otherwise, they were.

We concur in the minority view.

Sec. 26(c) (1) provides a credit to a corporation upon its surtax on undistributed profits, when it cannot pay dividends without violating a written contract executed by it prior to May 1, 1936. This is clear enough. See Warren Tel. Co. v. Commissioner of Internal Revenue, 6 Cir., 128 F. 2d 503, 506.

■■■ It is almost a truism that the provisions of such a statute granting special tax credits are to be strictly construed. In Helvering v. Northwest Steel Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29, the court considered Sec. 26(c) (1). It there said: "Measured by this sound standard it is probably not necessary to go beyond the plain words of section 26(c) (1) in search of the legislative meaning. Certainly, at first blush, few would suppose that when Congress granted a special exemption to corporations whose dividend payments were prohibited by executed written contracts, it thereby intended to grant an exemption to corpora-

tions whose dividend payments were prohibited by state law. The natural impression conveyed by the words 'written contract executed by the corporation' is that an explicit understanding has been reached, reduced to writing, signed and delivered. True, obligations not set out at length in a written contract may be incorporated by specific reference, or even by implication. But Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by adding a precautionary clause that the granted credit can only result from a provision which 'expressly deals with the payment of dividends.' " See also Buffalo Slag Co. v. Com'r of Internal Revenue, 2 Cir., 131 F.2d 625, 626; and Warren Tel. Co. v. Commissioner of Internal Revenue, supra.

■■ Further, respondent was required to sustain the burden of showing compliance with the exact terms of the statute upon which it relies. In Helvering v. Ohio Leather Co., 317 U.S. 102, 106, 63 S.Ct. 103, 106, 87 L.Ed. 113, the court said: "Since § 26(c) (2) grants a special credit in the nature of a deduction, the taxpayer must sustain the burden of showing compliance with its exact terms. Helvering v. Northwest Steel Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348."

This pronouncement is equally applicable to Sec. 26(c) (1).

It is urged that the quotation from the Northwest Steel Mills case is dicta because the case involved the question, whether the Northwest Mills was entitled to credit upon surtaxes when they were prohibited by state law from distributing dividends and therefore has no application here.

We do not feel required to determine whether the case. should technically rank as a precedent, since in any event, it has come to be regarded as sound law. It has been approved in Helvering v. Ohio Leath-

---

[1] "Sec. 26. Credits of Corporations. In the case of a corporation the following credit shall be allowed * * *

"(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the

aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a *written contract* executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *" (Italics ours.)

er Co., supra; in Warren Tel. Co. v. Commissioner of Internal Revenue, supra; and in Helvering v. Nelson Co., 8 Cir., 133 F.2d 846.

The crux of our case lies in the last sentence of the letter of April 29, 1935. The promise to *consult* when read against the background of respondent's financial position, its meager cash balance, the ratio of its borrowings to its cash, and the fact that its earned surplus was not actually in cash, might reasonably be interpreted, as between respondent and Provident, a promise to declare no dividends without Provident's consent. Officers of respondent, in addition to officers of Provident, as well as other creditor banks, testified that they regarded such to be the meaning of the agreement to consult. But decision is not controlled by what, in view of all the surrounding circumstances, these officers thought the letter meant.

We are dealing with a taxing statute which granted credits to respondent when, and only when, it had shown that it had complied with its exact terms. Respondent must show that it had executed a written contract which prohibited it from declaring dividends. In Helvering v. Magnus Beck Brewing Co., Inc., 2 Cir., 132 F.2d 379, 380, 381, the court in considering Sec. 26(c) (2) of the Revenue Act of 1936, discussed the question of interpreting a contract by outside circumstances, and concluded that Congress preferred a ready test for statutory compliance to the uncertainties which might attend a full measure of relief. It decided that it must look to the contract alone. "It is the legal compulsion of the contract itself not the straits to which it drives the taxpayer, which determines the issue. The Commissioner is not obliged to examine the taxpayer's business * * *." And in Buffalo Slag v. Commissioner of Internal Revenue, supra [131 F.2d 626], the same court in considering whether an agreement that "'no check, note, trade acceptance or other order or promise for the payment of money be made, drawn, signed, endorsed or accepted' by the company without the approval of a comptroller who was placed in the company by the bank" entitled the company to credit under Sec. 26(c) (1) had this to say, "* * * The allowance of these credits is an act of grace by Congress like the allowance of other deductions from gross income and we have no right to extend its generosity beyond the point

it fixed. * * * To take advantage of the privilege a taxpayer must show that all the statutory conditions precedent by which it may be restricted have been fulfilled. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128. Under these applicable principles of construction, this taxpayer has been unable to bring itself within the *close limits of the privilege* and consequently is not within the statute at all." (Italics ours.)

In Hobbs-Western Co. v. Commissioner of Internal Revenue, 8 Cir., 133 F.2d 165, 167, the court in considering both Sec. 26 (c) (1) and Sec. 26(c) (2) said, "The burden was on the petitioner to show that the contract came *within the exact terms of the statute* to entitle it to the credit claimed." (Italics ours.) See also Valentine-Clark Corporation v. Commissioner of Internal Revenue, 8 Cir., 137 F.2d 481, 484, where the court said, "Nor can the exemption claimed rest only upon implication or inference."

In Helvering v. Nelson Co., supra, 133 F.2d at page 849, the court said: "The provision of the second contract relied upon does not 'expressly' prohibit the payment of dividends, and an implied prohibition is not available to the taxpayer."

■ These cases set up the criteria that the respondent had the burden of showing that the written contract came precisely within the wording of the statute. An agreement not to pay dividends without consulting Provident does not per se constitute a prohibition upon the payment of dividends. The word consult means,— "To seek the opinion or advice of another; to take counsel; to deliberate together; to confer * * *; to apply for information or instruction. * * *" Webster's New International Dictionary, 2d Edition.

■ There is no suggestion that consulting implies obtaining consent. The phrase "without consulting you" is plain and should be considered in its natural and ordinary sense. The inference that respondent and Provident drew from it, in view of their negotiations, is not controlling. The Commissioner was not authorized to adopt their view. He, as well as respondent, was legally bound by the statute which required a written contract expressly dealing with the payment of dividends.

**1002**

The Tax Court relied upon Glenn, Collector v. Chess & Wymond, 6 Cir., 132 F. 2d 621. From our viewpoint that case does not sustain respondent's contention. The facts in that case show that there was an exchange of letters (D.C., 40 F.Supp. 666); and this court held that the letters resulted in a written contract expressly dealing with the payment of dividends. Our decision therein was based upon the contract and not upon extraneous considerations.

The decision of the Tax Court is reversed and the case remanded for further proceedings in accordance herewith.

McALLISTER, Circuit Judge (dissenting).

I am of the opinion that the decision of the Tax Court should be sustained upon the authority of Glenn v. Chess & Wymond, Inc., 6 Cir., 132 F.2d 621.