**INTERNATIONAL PAPER CO. v. UNITED STATES.**

No. 46961.

United States Court of Claims.

Decided March 6, 1950.

Curtis Campaigne, Jr., New York City, for plaintiff.

H. S. Fessenden, Washington, D. C., with whom was Assistant Attorney General Theron Lamar Caudle, for defendant, Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and HOWELL, LITTLETON, WHITAKER and MADDEN, Judges.

HOWELL, Judge.

This case involves claims for refunds of undistributed profits taxes paid, under Section 14 of the Revenue Act of 1936, Ch. 690, 49 Stat. 1655, 26 U.S.C.A.Int.Rev.Acts, page 823, by plaintiff's predecessor, Bagpak, Inc., for the years 1936, in the sum of $237.-50, and 1937, in the sum of $1,672.30.

Plaintiff bases its right to the refunds upon Section 26(c) (3) of the Revenue Act of 1936, 49 Stat. 1664, as amended by Ch. 619, Title I, Sections 501(a) (2) and 501(c) of the Revenue Act of 1942, 56 Stat. 798, 954, 26 U.S.C.A.Int.Rev.Acts, page 344, on the ground that Bagpak, Inc., had deficits in accumulated earnings and profits on December 31, 1935, and December 31, 1936, and, although that company was a Delaware corporation, it was prohibited by the laws of the State of New York, McKinney's Consol. Laws, c. 59, Stock Corporation Law, Article 6, from paying dividends during the existence of a deficit in accumulated earnings and profits.

The Commissioner of Internal Revenue, in disallowing the claims for refunds, based his denial upon the fact that the Delaware Corporation law, Ch. 65, Article I, Section 34, Revised Code of Delaware 1935, § 2066, specifically provides that a dividend may be paid from the net profits of the current year or of the preceding year even if the net assets do not exceed the capital of the corporation and that accordingly the payment of dividends in this case was not prohibited by law.

Plaintiff is a New York corporation with offices in New York City. Bagpak, Inc., was a Delaware corporation authorized during 1936 and 1937 to do business in the States of New York, Arkansas, Maryland, New Jersey, and Pennsylvania. During the years in question, Bagpak, Inc., was a wholly owned subsidiary of plaintiff's predecessor, International Paper and Power Company, a Massachusetts Trust. All of the property and assets of International Paper and Power Company, including all of the capital stock of Bagpak, Inc., were transferred to plaintiff on September 29, 1941. On November 27, 1947, Bagpak, Inc., was dissolved under the laws of Delaware and on that date plaintiff, as sole stockholder, by operation of law, received a dividend distribution in liquidation consisting of a conveyance of all of the property and assets of Bagpak, Inc.

During the years in question, Bagpak, Inc., was engaged in the manufacture and sale of paper bags and in the business of selling and leasing packaging machines. It maintained an office and place of business in New York City, a manufacturing plant at Camden, Arkansas, and a statutory office in charge of a resident agent in Dover, Delaware.

All Bagpak, Inc., directors' and stockholders' meetings were, as provided by its bylaws, held at its New York office. Also kept in New York were the general ledger, journal, the purchase journal, two cash books and customers' accounts receivable records. The taxpayer Bagpak's principal bank accounts were kept in New York. All agreements with its exclusive sales agent where executed, all orders by the agent were accepted, and all directions to its Arkansas plant also emanated from. Bagpak's New York office. During the same time, the company maintained an office at its plant in Arkansas, at which place were kept the inventory records as to operating materials and supplies and finished products, factory pay roll records, and records showing the cost of operations.

In 1936, 1937, and 1938, Bagpak, Inc., filed New York State franchise tax returns for the privilege of doing business, which returns were for the privilege period from November 1st of the year the returns were filed to the succeeding October 31st. In filing these returns, Bagpak, Inc., joined in the consolidated returns of its parent company and approximately 156 companies of an affiliated group. These consolidated returns were based upon business actually performed in the previous year. For internal accounting purposes of the affiliated group, the parent company allocated to Bagpak, Inc., upon the percentage of its assets located within the State of New York to the total assets of all located therein, and not upon the income earned by each of the companies. On that basis, the parent company allocated to Bagpak, Inc., $96.37 for the year ended October 31, 1937, $107.02 for the year ended October 31, 1938, and $169.75 for the year ended October 31, 1939. In the years in question, Bagpak, Inc., also paid minimum franchise taxes in Delaware and New Jersey and income taxes, franchise taxes, unemployment insurance taxes and personal property taxes as a single entity to the State of Arkansas.

In 1936 and 1937, Bagpak, Inc., filed corporation and excess profits tax returns showing tax liability for the year 1936 of $589.43 (including undistributed profits tax liability of $237.50) and tax liability for 1937 of $18,894.25 (including undistributed profits tax liability of $1,672.30), which liability was paid in installments in 1937 and 1938, respectively. In 1943, within one year from enactment of Section 501 of the Revenue Act of 1942, Bagpak, Inc., filed with the Collector of Internal Revenue, claims for refunds of the undistributed profits taxes above specified for 1936 and 1937. Both of these claims were disallowed by statutory notice dated February 8, 1946.

On December 31, 1935, and December 31, 1936, Bagpak, Inc., had deficits in accumulated earnings and profits in the respective sums of $421,433.01 and $417,676.47, which were greatly in excess of the company's net income for the respective taxable years. Net income for 1936 was $3,744.87 and for 1937 was $122,546.31.

It is pertinent at this point to refer to the statutes. Section 14 of the Revenue Act of 1936, Ch. 690, 49 Stat. 1655, imposed a surtax on corporate net income earned during a tax year but not distributed as dividends. The Commissioner of Internal Revenue took the position, which was sustained by the courts, that a corporate taxpayer was subject to the undistributed profits surtax even though the State of incorporation prohibited the payment of dividends because of accumulated deficits larger than the year's earnings. Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29, and Crane-Johnson v. Helvering, 311 U.S. 54, 61 S.Ct. 114, 85 L.Ed. 35. The result of this was that some corporations were caught in a "trap" whereby they were taxed by the Federal Government if they did not pay dividends and subject to prosecution and penalties by the Federal Government or the States if they did.

To relieve this hardship, Congress enacted Section 501(a) (2) of the Revenue Act of 1942, 56 Stat. 798, 954, which was made retroactive to the year 1936, and allowing a "trapped" corporation a credit to the amount of its deficit. The statute reads, in part:

"§ 26. Credits of Corporations.

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \*

"(3) Deficit corporations.—In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936."

Section 501(c) of the same Act, authorized claims for repayment to be filed within one year of the passage of said section, "notwithstanding any other provision of law or rule of law."

Article 6 of the Stock Corporation Law of New York, Section 58, reads in part: "No

stock corporation shall declare or pay any dividend which shall impair its capital or capital stock, nor while its capital or capital stock is impaired, nor shall any such corporation declare or pay any dividend or make any distribution of assets to any of its stockholders, whether upon a reduction of the number of its shares or of its capital or capital stock, unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities including capital or capital stock as the case may be."

Section 114 of the same law makes this prohibition applicable to foreign corporations transacting business in New York and Article 64 of the Penal Law of New York, McKinney's Consol.Laws, c. 40, § 664, makes it a misdemeanor to "make a dividend, except from surplus, and in the cases and manner allowed by law." Section 667 of the same Article provides: " * * * It is no defense to a prosecution for a violation of the provisions of this article, that the corporation.is a foreign corporation, if it carries on business or keeps an office therefor in this state. * * *"

■ From the facts we have found and under the laws of New York which have been cited, and which were in effect since prior to May 1, 1936, plaintiff's claims clearly fall within Section 26(c) (3) of the Revenue Act of 1936, as amended by Section 501(a) (2) of the Act of 1942, allowing a credit or refund to a "trapped" corporation. As we read the statutes and find the facts, plaintiff must and does prove that it had a deficit in accumulated earnings and profits as of the close of 1935 and 1936 and that it was prohibited by a provision of New York law from paying dividends during the period of a deficit. Defendant concedes this as to plaintiff's right to recover in 1936.

Section 501, which we have quoted in part, grants to corporations a credit that is a deduction from the amount of adjusted net income before applying the graduated rates of surtax imposed by Section 14(b) of the Revenue Act of 1936. Defendant, while conceding the right of plaintiff to recover for 1936, denies this right for 1937 because the corporation ceased to have a

deficit in the latter year, a point contested by plaintiff but which we do not find it necessary to decide, and therefore was not prohibited from paying dividends during the whole of 1937.

We have spoken of the action in Congress which was designed to relieve the hardship attendant upon application of the 1936 law. The intention of Congress is borne out in the language of the Report to the Senate of the Committee on Finance, S.Rep.No. 1631, 77th Cong., 2d Sess., pp. 244–6, wherein it said:

"Sec. 501. Additional credits for undistributed profits tax.

    *     *     *     *     *     *

"Section 501 amends section 14(a) (2) of the Revenue Act of 1936, relating to the definition of undistributed net income, and section 26 of that Act, relating to credits of corporations, and grants relief from the undistributed-profits tax for taxable years beginning after December 31, 1935, and prior to January 1, 1938, by allowing as an additional credit in computing undistributed net income the portion of the adjusted net income which, in certain instances, could not be distributed as a taxable dividend. * * *

"Under section 14 of the Revenue Act of 1936 corporations in general were subject to surtax at various rates from 7 to 27 percent of their undistributed net income. In some instances State law or an order of a public regulatory body prohibited payment of dividends during the existence of a deficit even though the corporation had current earnings and profits which would constitute undistributed net income under the definition thereof in section 14(a) (2). Such corporations were,'therefore, subject to undistributed profits surtax even though they were prohibited by law from paying dividends. The addition of the new paragraph 3 to subsection (c) of section 26 to provide an additional credit in the amount of the deficit in accumulated earnings and profits as of the close of the preceding taxable year is intended to give relief in certain of these cases.

" *     *     *     *     *     *

"The application of the deficit credits provided by these amendments may be illustrated by the following examples:

"(1) The X Corporation for the calendar year 1936 had an adjusted net income of $200,000 but had a deficit in accumulated earnings and profits as of the close of the preceding calendar year of $20,000. By reason of a State law in effect prior to May 1, 1936, with respect to deficit corporations, only $180,000 of this adjusted net income could be distributed as dividends. Under section 14 of the Revenue Act of 1936, X Corporation would be subject to undistributed-profits surtax on $20,000 even though it paid out the entire amount which it could have distributed without violating the State law—namely, $180,000, as taxable dividends. Under the amendment to section 26(c), X Corporation would be allowed a credit of $20,000, and would not be liable for any undistributed-profits tax for the calendar year 1936."

From the foregoing it is apparent that it was intended to give the credit to the extent of the deficit as of the close of the preceding calendar year regardless of the state of earnings and profits throughout 1937. The language of the amendment is consistent with the expressed intention of the Committee. United States v. Ogilvie Hardware Co., 330 U.S. 709, 67 S.Ct. 997, 91 L.Ed. 1192. This is the leading case which interprets and upholds the Act of 1942. It is to be noted in passing, that the dissenting opinion in the case regards, also, the fact of the existence of a deficit as of the close of the preceding year as the factor to be considered once it is shown that the State law prohibits payment of dividends under the conditions of a deficit.

This being the situation, therefore, one has but to note that the net income of the corporation as set forth in our Finding 10 is insufficient to overcome the deficit set forth in Finding 11. Payment of dividends under these circumstances was prohibited by State law. Sections 58 and 114 of the New York Stock Corporation Law were applicable to plaintiff's predecessor, Bagpak, Inc., which did and was authorized to do a major share of its business in New York State. International Ticket Scale Corporation v. United States, 2 Cir., 165 F.2d 358. See, also, on related implications of the problem and authority of a State to impose restrictions on foreign corporations, German-American Coffee Co. v. Diehl, 216 N.Y. 57, 109 N.E. 875; International Harvester Co. v. Wisconsin, 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373; Firemen's Insurance Co. v. Beha, D. C., 30 F.2d 539. Thus, the requirement of Section 501 of the Revenue Act of 1942, that a taxpayer, in order to be relieved from a "trap" be prohibited by a provision of law from paying dividends during existence of a deficit in accumulated earnings and profits, is met. Dallas Oil & Refining Co. v. United States, D.C., 73 F.Supp. 286; Philadelphia Carpet Co. v. United States, D.C., 68 F.Supp. 712; United States v. Byron Sash and Door Co., 6 Cir., 150 F.2d 44. Had the applicable local statute not prohibited payment of a dividend during the existence of a deficit, no credit could be allowed. United States v. Riely, 4 Cir., 169 F.2d 542, certiorari denied 335 U.S. 908, 69 S.Ct. 411.

It follows that plaintiff is entitled to a refund of taxes paid, in the amounts of $237.50 and $1,672.30, a total of $1,909.80 with interest thereon from the respective dates of overpayment as set forth in Finding 10, as provided by law.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.